## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE ASSAD, Derivatively on Behalf of PERSHING SQUARE TONTINE HOLDINGS, LTD., <br><br>       Plaintiffs, <br><br>   v. <br><br> PERSHING SQUARE TONTINE HOLDINGS, LTD., <br><br>       Nominal Defendant, <br><br>   v. <br><br> PERSHING SQUARE TH SPONSOR, LLC, LISA GERSH, MICHAEL OVITZ, JACQUELINE D. RESES, JOSEPH S. STEINBERG, PERSHING SQUARE, L.P., PERSHING SQUARE INTERNATIONAL, LTD., AND PERSHING SQUARE HOLDINGS, LTD., <br><br>       Defendants. | Case No. 1:21-cv-06907 (AT) (BCM) |

### THE PERSHING SQUARE DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

KAPLAN HECKER & FINK LLP
Roberta A. Kaplan
Jenna M. Dabbs
John C. Quinn
D. Brandon Trice
350 Fifth Avenue, 63rd Fl.
New York, NY 10118
(212) 763-0883

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 4

      A.    The SEC's longstanding treatment of SPACs .................................................. 4

      B.    PSTH incorporates as a SPAC ......................................................................... 6

      C.    PSTH discloses its purpose to and seeks approval from the SEC ................... 7

      D.    The SEC approves PSTH's registration and PSTH conducts its IPO.............. 9

      E.    PSTH pursues its purpose of completing an initial business combination ..... 11

      F.    Plaintiff belatedly purchases PSTH shares and, led by interested academics, commences this action ................................................................ 11

LEGAL STANDARD................................................................................................................ 13

ARGUMENT .......................................................................................................................... 13

    I.    Plaintiff lacks a private right of action to enforce any of the provisions at issue ....... 13

      A.    Declaratory Judgment (Count I) .................................................................... 14

      B.    Section 36(b) (Count II)................................................................................. 15

      C.    Section 47(b) (Count III) ............................................................................... 16

      D.    Section 215(b) (Count IV) ............................................................................. 17

    II.    Plaintiff lacks standing to sue on behalf of PSTH ................................................ 18

      A.    Plaintiff fails the contemporaneous ownership rule........................................ 18

      B.    Plaintiff fails to plead demand futility ........................................................... 19

    III.    Plaintiff's claims are untimely ............................................................................ 20

      A.    Plaintiff's claims are barred by the statute of limitations .............................. 20

      B.    Alternatively, Plaintiff's claims are unripe..................................................... 22

    IV.    PSTH is not an investment company .................................................................... 23

      A.    PSTH is not an investment company under the ICA's plain terms ................ 23

      B.    The SEC's *Tonopah* test confirms that PSTH is not an investment company as a matter of law .......................................................................... 24

    V.    Plaintiff fails to allege a violation of the ICA........................................................ 28

    VI.    Plaintiff fails to allege a violation of the IAA........................................................ 29

    VII.    Plaintiff's declaratory judgment and "direct" claims are in the wrong forum........... 30

CONCLUSION.......................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*118 E. 60th Owners, Inc. v. Bonner Properties, Inc.*,
  677 F.2d 200 (2d Cir. 1982) .................................................................. 21

*7547 Partners v. Beck*,
  682 A.2d 160 (Del. 1996) ...................................................................... 18

*AHW Inv. P'ship v. Citigroup, Inc.*,
  806 F.3d 695 (2d Cir. 2015) .................................................................. 18

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) .............................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 13

*Bd. of Governors of Fed. Res. Sys. v. Inv. Co. Inst.*,
  450 U.S. 46 (1981) ................................................................................ 29

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 13

*Bellikoff v. Eaton Vance Corp.*,
  481 F.3d 110 (2d Cir. 2007) ...................................................... 13, 14, 29

*Blatt v. Merrill Lynch, Pierce, Fenner & Smith*,
  916 F. Supp. 1343 (D.N.J. 1993) .......................................................... 22

*Boilermakers Local 154 Ret. Fund v. Chevron Corp.*,
  73 A.D.3d 934 (Del. Ch. 2013) .............................................................. 7

*Bostock v. Clayton County, Ga.*,
  140 S. Ct. 1731 (2020) .......................................................................... 15

*Brookfield Asset Mgmt., Inc. v. Rosson*,
  2021 WL 4260639 (Del. Sept. 20, 2021) .............................................. 18

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .................................................................... 4

*Chevron Corp. v. Naranjo*,
  667 F.3d 232 (2d Cir. 2012) .................................................................. 14

i

*Christopher v. SmithKline Beecham Corp.*,
　567 U.S. 132 (2012) ........................................................................................................ 28

*Clark v. Nevis Cap. Mgmt., LLC*,
　2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) .................................................................... 29

*Daily Income Fund, Inc. v. Fox*,
　464 U.S. 523 (1984) ................................................................................................... 6, 19

*Gustafson v. Alloyd Co., Inc.*,
　513 U.S. 561 (1995) ........................................................................................................ 15

*Hsu v. UBS Fin. Servs., Inc.*,
　2011 WL 3443942 (N.D. Cal. Aug. 5, 2011) ................................................................ 21

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
　2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) .................................................................... 21

*In re Bank of N.Y. Derivative Litig.*,
　320 F.3d 291 (2d Cir. 2003) ..................................................................................... 18, 19

*In re Ebix, Inc. Stockholder Litig.*,
　2014 WL 3696655 (Del. Ch. July 24, 2014) ................................................................. 22

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
　922 F. Supp. 2d 445 (S.D.N.Y. 2013) ........................................................................... 18

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
　797 F.3d 148 (2d Cir. 2015) .......................................................................................... 18

*In re iAnthus Capital Holdings, Inc. Secs. Litig.*,
　2021 WL 3863372 (S.D.N.Y. Aug. 30, 2021) ................................................................. 4

*In re Penn Cent. Transp. Co.*,
　341 F. Supp. 845 (E.D. Pa. 1972) ................................................................................. 19

*In re SmileDirectclub, Inc. Derivative Litig.*,
　2021 WL 2182827 (Del. Ch. May 28, 2021) ................................................................. 18

*In re Tonopah Mining Co.*,
　26 S.E.C. 426 (1947) ................................................................................................*Passim*

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
　970 F.2d 1030 (2d Cir. 1992) .......................................................................... 20, 21, 22

*Kamen v. Kemper Fin. Servs., Inc.*,
　500 U.S. 90 (1991) ......................................................................................................... 19

*KDH Consulting Grp., LLC v. Iterative Cap. Mgmt. L.P.*,
    2020 WL 7251172 (S.D.N.Y. June 29, 2020) .................................................. 29, 30

*Kermanshah v. Kermanshah*,
    580 F. Supp. 2d 247 (S.D.N.Y. 2008) ............................................................. 21

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
    199 F.3d 99 (2d Cir. 1999) ............................................................................. 13

*Menowitz v. Brown*,
    991 F.2d 36 (2d Cir. 1993) ............................................................................. 22

*Northstar Fin. Advisors v. Schwab Invs.*,
    615 F.3d 1106 (9th Cir. 2010) ........................................................................ 14

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*,
    266 F.3d 112 (2d Cir. 2001) ........................................................................... 27

*Olmsted v. Pruco Life Ins. Co. of N.J.*,
    283 F.3d 429 (2d Cir. 2002) ..................................................................... 13, 14

*Omni Fin. Corp. v. Cohen*,
    1994 WL 97125 (S.D.N.Y. Mar 22, 1994) ..................................................... 15

*Oxford Univ. Bank v. Lansuppe Feeder, LLC*,
    933 F.3d 99 (2d Cir. 2019) ....................................................................... 16, 17

*Phoenix Four, Inc. v. Strategic Resources Corp.*,
    2006 WL 399396 (S.D.N.Y. Feb. 21, 2006) .............................................. 20, 21

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*,
    677 F.3d 178 (3d Cir. 2012) ........................................................................... 17

*SEC v. Fifth Ave. Coach Lines, Inc.*,
    289 F. Supp. 3 (S.D.N.Y. 1968) ..................................................................... 23

*SEC v. Fifth Ave. Coach Lines, Inc.*,
    435 F.2d 510 (2d Cir. 1970) ........................................................................... 23

*SEC v. Fiore*,
    416 F. Supp. 3d 306 (S.D.N.Y. 2019) ....................................................... 25, 26

*SEC v. Nat'l Presto Indus.*,
    486 F.3d 305 (7th Cir. 2007) ................................................................ 25, 26, 27

*Siemers v. Wells Fargo & Co.*,
    2007 WL 760750 (N.D. Cal. Mar. 9, 2007) ................................................... 18

*Starr Int'l Co., Inc. v. Am. Int'l Grp., Inc.*,
  648 F. Supp. 2d 546 (S.D.N.Y. 2009) ................................................................ 15

*Ucar Int'l v. Union Carbide Corp.*,
  2004 WL 137073 (S.D.N.Y. Jan. 26, 2004) ........................................................ 19

*UFCW Local 1500 Pension Fund v. Mayer*,
  2016 WL 6122458 (N.D. Cal. Oct. 19, 2016) ..................................................... 21

*UFCW Local 1500 Pension Fund v. Mayer*,
  895 F.3d 695 (9th Cir. 2018) ....................................................................... 15, 17

*United Food & Commer. Workers Union v. Zuckerberg*,
  2021 WL 4344361 (Del. Sept. 23, 2021) ........................................................... 20

*United States v. Savin*,
  349 F.3d 27 (2d Cir. 2003) ................................................................................. 24

*United States v. Zukerman*,
  897 F.3d 423 (2d Cir. 2018) ............................................................................... 24

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ........................................................................................... 17

*Yi v. Sterling Collision Ctrs., Inc.*,
  480 F.3d 505 (7th Cir. 2007) ............................................................................. 28

**Statutes**

15 U.S.C. § 80a-1 ..................................................................................................... 1

15 U.S.C. § 80a-2(a)(36) ......................................................................................... 26

15 U.S.C. § 80a-3(a)(1)(A) ....................................................................... 1, 3, 12, 23

15 U.S.C. § 80a-3(a)(1)(C) ............................................................................... 24, 26

15 U.S.C. § 80a-3(b) ............................................................................................... 14

15 U.S.C. § 80a-3(a)(2) ........................................................................................... 26

15 U.S.C. § 80a-7 .................................................................................................... 16

15 U.S.C. § 80a-7(a) ............................................................................................... 16

15 U.S.C. § 80a-8(e) ............................................................................................... 15

15 U.S.C. § 80a-8(f) ................................................................................................ 14

15 U.S.C. § 80a-13(a) ................................................................................................ 15

15 U.S.C. § 80a-15(a) ................................................................................................ 16

15 U.S.C. § 80a-16(a) ........................................................................................... 16, 28

15 U.S.C. § 80a-35(b) ........................................................................................... 15, 21

15 U.S.C. § 80a-41 ................................................................................................. 6, 14

15 U.S.C. § 80a-46(b) ....................................................................................... 16, 17, 29

15 U.S.C. § 80b-1 ....................................................................................................... 2

15 U.S.C. § 80b-3 ...................................................................................................... 30

15 U.S.C. § 80b-3(a) .................................................................................................. 18

15 U.S.C. § 80b-5(a) ............................................................................................. 18, 30

15 U.S.C. § 80b-9 ....................................................................................................... 6

28 U.S.C. 1658(b) ..................................................................................................... 21

## Rules

Del. Ch. Ct. R. 23.1(a) .......................................................................................... 18, 19

Fed. R. Civ. P. 23.1 .................................................................................................. 18

## Regulations

17 C.F.R. § 239.11 ..................................................................................................... 6

17 C.F.R. § 270.3a-1 ................................................................................................. 26

## Other Authorities

57 Fed. Reg. 18037-01, 18040 (Apr. 28, 1992) ............................................................. 6

NYSE Listed Company Manual 102.06 .................................................................... 5, 12

SEC Release No. 34-57785 (May 6, 2008) ............................................................. *Passim*

SEC Release No. 34-58228 (July 25, 2008) ............................................................. 5, 28

The Pershing Square Defendants[1] respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint with prejudice.

## PRELIMINARY STATEMENT

Since 2003, the Securities and Exchange Commission has approved the registration of more than 1,000 special purpose acquisition companies, or "SPACs," which have collectively raised more than $250 billion.  During that time, the SEC has not required a single SPAC to register as an investment company under the Investment Company Act ("ICA"), a statute over which the SEC has regulatory authority.  15 U.S.C. § 80a-1 *et seq.*  Indeed, the SEC has never so much as hinted that SPACs might be subject to the requirements of the ICA.  The reason is simple: SPACs are not investment companies.  The explicit purpose of a SPAC is not to manage a portfolio of investment securities, but rather to effectuate a business combination with an operating company within a limited time frame prescribed by law.

Plaintiff, a lone shareholder of Pershing Square Tontine Holdings, Ltd. ("PSTH"), nonetheless claims to have discovered that SPACs are actually, and always have been, investment companies.  He argues that SPACs are "engaged primarily" in "investing" in securities, 15 U.S.C. § 80a-3(a)(1)(A), because they keep the proceeds of their IPOs in trust accounts pending an initial business combination—as required under New York Stock Exchange ("NYSE") and NASDAQ rules approved by the SEC—and those trust accounts in turn hold government securities and cash equivalents.  In other words, according to Plaintiff, when a SPAC preserves its capital as a *means* to the end (completing a business combination in a limited timeframe), the means somehow *become* the end, and the SPAC is suddenly transformed into an investment company.

---

[1] The Pershing Square Defendants are Pershing Square Tontine Holdings, Ltd. ("PSTH"); Pershing Square TH Sponsor, LLC; Pershing Square, L.P.; Pershing Square International, Ltd.; and Pershing Square Holdings, Ltd.  The Pershing Square Defendants join in and incorporate by reference the Memorandum of Law in Support of the PSTH Directors' Motion to Dismiss also filed today.

From this fundamentally mistaken premise, Plaintiff asks the Court to set aside the SEC's longstanding treatment of SPACs and force PSTH to unwind and restructure itself according to the requirements of the ICA.  He also seeks rescission of a number of contracts that allegedly do not comply with the ICA or the Investment Advisers Act ("IAA"), 15 U.S.C. § 80b-1 *et seq.* Finally, he seeks damages on the theory that these same contracts provide certain sponsor entities and directors of PSTH with "excessive compensation," even though they have not been paid anything—instead, *they paid* tens of millions of dollars to PSTH for contractual rights that are contingent upon the company completing a business combination, as investors hope it will do.

Plaintiff's case is fatally flawed from top to bottom and the Amended Complaint should be dismissed with prejudice for multiple, independent reasons.

*First*, Plaintiff lacks standing because Congress has not given him a private right of action to enforce any of the statutory provisions at issue.  The ICA is clear on its face that the SEC is the gatekeeper that decides who is an investment company and must register as such.  Under controlling law, private actors like Plaintiff may not usurp the SEC's statutory gatekeeper role.  *If* the SEC requires a company to register, that registration triggers a variety of other provisions under the statute, some of which private actors may enforce.  But by their terms, those provisions apply only *if* the SEC has first determined that a company must register and become subject to them. Thus, all but one of the provisions Plaintiff invokes apply to companies that *have "registered"* as investment companies—which the SEC has never required any SPAC to do.  The sole exception is Section 47(b).  But that section gives contractual parties a narrow right to rescind a contract that is made, or whose performance involves, a violation of another provision of the statute.  It does not entitle shareholders to rescind every contract a company has ever entered into simply because the shareholder thinks the company should have registered as an investment company.

*Second*, Plaintiff lacks standing to bring claims on behalf of PSTH for the additional reasons that he (1) did not own shares contemporaneous with the alleged harm and (2) has not plausibly alleged that demand on PSTH's Board is futile.  Plaintiff is a poster child for why these limitations on standing exist.  After purchasing a share or shares in May 2021—long after the alleged harm occurred—he brought this action seeking to upend PSTH's entire existence, and the reasonable expectations of every other investor, based on alleged harm he did not suffer, and without notifying the Board charged with protecting the interests of the thousands of other shareholders who want PSTH to complete a business combination.  In reality, Plaintiff's case works against those interests by casting a cloud over PSTH (and all other SPACs), thereby making it more difficult to complete the business combination that PSTH set out to accomplish.

*Third*, Plaintiff's claims are untimely.  PSTH entered into and disclosed the contracts Plaintiff challenges (and PSTH's purpose) back in June and July 2020, and Plaintiff filed this case seeking effectively to invalidate PSTH and rescind those contracts more than a year later, outside the applicable one-year statute of limitations after his claims accrued—and more than halfway through PSTH's limited, two-year lifetime.  Plaintiff cannot escape his untimeliness with inherently speculative allegations about how PSTH's actual operations will play out.  Whether and when PSTH will engage in a business combination in its remaining eight months, and what that would mean for the compensation of the sponsor entities and directors, is entirely unsettled.

*Fourth*, as a matter of law, Plaintiff cannot plausibly allege the cornerstone of his audacious theory:  that PSTH is an investment company "engaged primarily" "in the business of investing" in securities.  15 U.S.C. § 80a-3(a)(1)(A).  As the SEC recognized when it first approved SPACs to list on the NYSE and NASDAQ, SPACs have "*the purpose* of purchasing operating companies or assets within a certain time frame."  SEC Release No. 34-57785, at 10 (May 6, 2008) (emphasis

3

added).  That SPACs temporarily hold their assets in government securities and cash equivalents while they pursue that purpose does not transform them into investment companies.  Under the plain terms of the ICA and the five-factor test the SEC has applied for more than half a century, *In re Tonopah Mining Co.*, 26 S.E.C. 426 (1947), no reasonable investor would plausibly believe otherwise.  Not even Plaintiff claims to have such a belief.  Even accepting Plaintiff's factual allegations as true, his claim that all SPACs are investment companies is utterly implausible.

*Fifth*, even if PSTH somehow were an investment company (and it is not), Plaintiff fails to adequately allege any actual violation of the ICA or the IAA.  None of the ICA provisions on which Plaintiff relies apply here.  And without that, his secondary IAA claims fall apart too, as Plaintiff fails to allege any separate violation of the IAA.

*Finally*, Plaintiff's claim for a sweeping declaration as to PSTH's regulatory status, and his "direct" claim on behalf of a class of Class A common stockholders, fail for the additional, independent reason that they must be brought in a different forum.

No matter how Plaintiff spins it, he has no right or basis to overturn the SEC's longstanding, uninterrupted, and correct judgment that SPACs are not investment companies.  The Complaint, which Plaintiff has already amended, should be dismissed with prejudice.

### **BACKGROUND**[2]

### A.    **The SEC's longstanding treatment of SPACs**

Special purpose acquisition companies, or SPACs, have been around for many years. Fundamentally, "SPACs are companies that raise capital in IPOs, with the *purpose of purchasing*

---

[2] The following facts, which are presumed true for purposes of the Amended Complaint, are drawn from the allegations and documents incorporated by reference therein, as well as all documents integral to the complaint.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).  The court also may take judicial notice of SEC releases.  *See, e.g.*, *In re iAnthus Capital Holdings, Inc. Secs. Litig.*, 2021 WL 3863372, at *3 n.24 (S.D.N.Y. Aug. 30, 2021).  All citations to "Ex." are to the exhibits attached to the Declaration of Jenna M. Dabbs.

*operating companies or assets* within a certain time frame." SEC Release No. 34-58228, at 6 (July 25, 2008) (emphasis added). The SEC has approved more than 1,000 SPACs, which have collectively raised more than $250 billion, since 2003.[3] The SEC approved NYSE and NASDAQ rules that allowed SPACs to begin listing on those exchanges in 2008. SEC Release No. 34-57785; SEC Release No. 34-58228. In approving those rules, the SEC determined that the structural and other requirements that they imposed, which are now hallmarks of SPACs, "protect investors and the public interest," "remove impediments to and perfect the mechanism of a free and open market and a national market system," and "promote just and equitable principles of trade." SEC Release No. 34-57785, at 3-5, 6-7; *see also* SEC Release No. 34-58228, at 2-4.

Among other things, to be listed and conduct an IPO, a SPAC must keep "at least 90% of the proceeds" of its IPO "in a trust account controlled by an independent custodian until consummation of a business combination in the form of a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more operating businesses or assets…." NYSE Listed Company Manual 102.06. A SPAC is also limited in duration, as it must complete its business combination "within a specified time period not to exceed three years" or else liquidate. *Id.* § (e). And if it identifies a business combination in time, it must give shareholders a right either to vote on the proposed transaction or to redeem their shares prior to its consummation if they do not want to participate. *Id.* § (c).[4]

Consistent with the foregoing requirements, the SEC has long reviewed and accepted SPACs' registration on Form S-1, the form for registration of public companies under the

---

[3] *See, e.g.*, SPAC Analytics, https://www.spacanalytics.com/.

[4] SPACs also are required to "meet all of the Exchange's corporate governance requirements applicable to operating companies." SEC Release No. 34-57785, at 2. As the SEC has observed, the rules' requirements are similar to "the investor protection measures contained in Rule 419 under the Securities Act," which "applies to blank check companies issuing penny stock," *id.* at 12 & n.25, and so long as penny stock companies comply with that rule's requirements they are not regulated under the ICA, 57 Fed. Reg. 18037-01, 18040 (Apr. 28, 1992).

Securities Act of 1933 "for which no other form is authorized or prescribed." 17 C.F.R. § 239.11. By contrast, investment companies are unique entities that are required to file a different form and to fulfill other conditions, distinct from those prescribed by the '33 Act, that are tailored to the unique requirements of the ICA. *See, e.g.*, *id.* § 274.11A. More specifically, the ICA "regulates most transactions between investment companies and their advisors," as well as the form of those relationships, to minimize "potential conflicts of interest" between the investment company and its adviser. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536-37 (1984) (citation omitted).

The SEC has never treated SPACs as investment companies, despite its regulatory and enforcement authority for the ICA (and the IAA). 15 U.S.C. §§ 80a-41, 80b-9. The SEC has publicly discussed further regulation of SPACs in recent months. But those discussions likewise have never referenced the ICA (or IAA) or suggested that SPACs are, in fact, investment companies. Rather, the SEC has turned to the requirements of the general securities laws, including those governing conflict disclosures.[5] Nor has the SEC invoked the ICA (or the IAA) in enforcement actions against SPACs.[6] Put simply, the agency charged with regulating both SPACs and investment companies has never so much as suggested that SPACs should be considered investment companies or subjected to the ICA, as Plaintiff seeks to do here.

## B.   PSTH incorporates as a SPAC

PSTH incorporated in Delaware on May 4, 2020. ECF 44, Amended Complaint ("AC") ¶ 35. Consistent with the applicable requirements for SPACs, in its Certificate of Incorporation,

---

[5] *See, e.g.*, Nicola M. White, Bloomberg Tax, "SEC Leans on SPACs for Detailed Disclosures of Risk, Controls" (Oct. 13, 2021), https://news.bloomberglaw.com/financial-accounting/sec-leans-on-spacs-for-detailed-disclosures-of-risk-controls; Securities and Exchange Commission, "SPACs, IPOs, and Liability Risk under the Securities Laws" (Apr. 8, 2021), https://www.sec.gov/news/public-statement/spacs-ipos-liability-risk-under-securities-laws.

[6] *See, e.g.*, Press Release, Securities and Exchange Commission, "SEC Charges SPAC, Sponsor, Merger Target, and CEOs for Misleading Disclosures Ahead of Proposed Business Combination" (July 13, 2021), https://www.sec.gov/news/press-release/2021-124 (misleading claims about proposed merger target).

PSTH described its "Business Combination Requirements" and "Existence" as requiring either (1) "consummation of [an] Initial Business Combination" within two years of its IPO (or 30 months if it executes a letter of intent within two years), or (2) liquidation and distribution of the company's assets back to the shareholders.  Ex. A, 2d Amended and Restated Certificate of Incorporation of Pershing Square Tontine Holdings, Ltd. (July 16, 2020) ("COI") § 9.1; AC ¶¶ 38-39.  Thus, in its "contract" with shareholders, *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.D.3d 934, 957 (Del. Ch. 2013), PSTH made clear that its purpose is to complete a business combination in a limited, two-year time frame, or it would wind up its affairs.

### C.      PSTH discloses its purpose to, and seeks approval from, the SEC

PSTH reiterated its purpose in the offering materials that it submitted to the SEC and provided to investors.  PSTH filed its Form S-1 with the SEC on June 22, 2020.  *See* AC ¶ 35.  On the first page of the attached Prospectus, PSTH stated that it was "formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination"—"our initial business combination."  Ex. B, PSTH, Amended Prospectus (Form S-1/A) (July 16, 2020) ("S-1"), Cover Page at 1.  PSTH also described itself as a "special purpose acquisition company" and said that, for its "Proposed Business," "[w]e intend to pursue merger opportunities with private, large capitalization, high quality, growth companies." *Id.* at 4-6.  PSTH stated that its "business will be to identify and complete our initial business combination" and not to purchase "with a view to resale or profit from their resale" or "to be a passive investor."  *Id.* at 60.  And PSTH explicitly disclosed that "[i]n order *not to be regulated as an investment company* … we must ensure that we are engaged primarily in a business other than investing, reinvesting or trading in securities."  *Id.* (emphasis added).

In addition, PSTH explained that it would temporarily place the proceeds of the IPO in a trust account administered by a third-party institution that "is not permitted to invest in other

securities or assets" beyond "U.S. Treasury obligations" and money market fund cash equivalents, and made clear that the offering is "not intended for persons who are seeking a return on investments in government securities or investment securities." *Id.* at 27.  PSTH also affirmed that if it did not complete an initial business combination in the specified time, it would liquidate and return shareholders' investment.  *Id.*; *id.*, Cover Page at 2.

Finally, PSTH disclosed in its Prospectus that it had entered into or intended to enter into several contracts with sponsor entities and directors in order to achieve its purpose of identifying and completing a business combination, as outlined below.  While all SPACs contract with their sponsors and directors, PSTH's contracts, as commentators recognized at the time, uniquely ensured that the interests of PSTH's sponsors and directors are closely aligned to those of investors by requiring the sponsors and directors to pay millions of dollars to the company up front in exchange for rights that turn on PSTH's ultimate success or failure.[7]

Sponsor Warrant Purchase Agreement ("SWPA").  PSTH entered into an agreement on July 21, 2020 with the "Sponsor"—Pershing Square TH Sponsor, LLC—pursuant to which the Sponsor paid PSTH $65 million for warrants, based upon their fair market value as determined by a nationally recognized third-party valuation firm.  Each warrant, which is exercisable between three and ten years after an initial business combination may occur, entitles the Sponsor to purchase up to 5.95% of the post-combination entity's Class A common stock for $24 per share (120% of what investors would be required to pay in the IPO).  Ex. B, S-1, Cover Page at 1-2; AC ¶¶ 37, 84.

Director Warrant Purchase Agreements ("DWPAs").  PSTH entered into agreements on July 21, 2020 with each of its four directors (other than Mr. Ackman, PSTH's Chairman and Chief

---

[7] *See, e.g.*, Michael Klausner, Michael Ohlrogge & Emily Rain, *A Sober Look at SPACs*, Yale J. on Reg., (forthcoming) (manuscript at 52-54), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3720919.

Executive Officer), pursuant to which the directors paid in the aggregate $2,837,000 for warrants on the same terms (*e.g.*, strike price, exercise period) as the Sponsor, based on the same third-party valuation.  Ex. B, S-1, Cover Page at 2; *id.* at 79-80; AC ¶ 85.

Forward Purchase Agreement ("FPA").  PSTH entered into an agreement on June 21, 2020 with the "Pershing Square Funds"—Pershing Square, L.P.; Pershing Square International, Ltd.; and Pershing Square Holdings, Ltd.  The Pershing Square Funds are investment funds that wholly own the Sponsor and are advised by Pershing Square Capital Management, L.P. ("PSCM"), a registered investment adviser under the IAA.  AC ¶¶ 26-30, 77.  Under the FPA, the Pershing Square Funds committed to purchase 50 million "Forward Purchase Units" for $1 billion at any point prior to the initial business combination, and they received the option to purchase up to 100 million Forward Purchase Units for $2 billion in the same timeframe.  Each such unit consists of one share of Class A common stock and 1/3 of a warrant to purchase another Class A share at a later date for $23.  Ex. B, S-1, Cover Page at 1; *see* AC ¶¶ 77-79.

Director Forward Purchase Agreements ("DFPAs").  PSTH entered into agreements on July 21, 2020 with two of its directors (Mr. Ovitz and Ms. Reses), pursuant to which they agreed to pay in the aggregate $6 million for Forward Purchase Units on the same terms as the Pershing Square Funds.  Ex. B, S-1, Cover Page at 1; *id.* at 89; AC ¶ 82.

**D.     The SEC approves PSTH's registration and PSTH conducts its IPO**

As part of the SEC's review process, the SEC provided various comments, including with respect to disclosures about the foregoing contracts and potential conflicts of interest.[8]  Not a single one of the SEC's comments referenced the ICA, much less indicated that PSTH could be

---

[8] *See, e.g.*, Letter from Division of Corporation Finance, Office of Real Estate & Construction, to PSTH (July 15, 2020),     https://www.sec.gov/Archives/edgar/data/0001811882/000000000020006442/filename1.pdf     (sponsor warrants); Letter from Division of Corporation Finance, Office of Real Estate & Construction to PSTH (July 9, 2020), https://www.sec.gov/Archives/edgar/data/0001811882/000000000020006169/filename1.pdf (conflicts of interest).

considered an investment company required to register on a different form that seeks different information tailored to the entirely different requirements of the ICA.

The SEC approved PSTH's registration on July 21, 2021,[9] and PSTH conducted its IPO on the NYSE the next day.  AC ¶ 36.  PSTH ultimately sold 200 million "IPO Units" at $20 each, raising approximately $4 billion, the largest amount ever raised by a SPAC.  *Id.* ¶¶ 1, 37.  Each IPO Unit consists of a share of PSTH Class A common stock and 1/9 of a warrant that gives its holder a right to purchase a share of Class A common stock for $23 within a set time frame after the closing of the Initial Business Combination.  *Id.* ¶ 40.

As required under the SEC-approved NYSE rules, each share of Class A common stock comes with a right of redemption, pursuant to which any holder can walk away from the proposed initial business combination by exchanging their share for the *pro rata* value per share of PSTH's assets immediately prior to its consummation.  *Id.*; *see also* Ex. B, S-1, Cover Page at 1.  Also as required under the NYSE rules, PSTH promptly deposited the proceeds of the IPO in a trust account.  AC ¶¶ 43-44.  Nearly all of the trust account assets are invested in government securities, with less than 1% invested in money market mutual funds, which invest exclusively in the same. *Id.* ¶¶ 44-45.  The SEC has recognized that it is "typical[]" for the trust account to hold "relatively safe, interest-bearing instruments."[10]  Indeed, by preserving its assets in government securities and cash equivalents in a "holding place" in this way, PSTH ensures that shareholders face essentially zero credit risk and that PSTH will be able to return their capital in full if they exercise their redemption rights.  *See, e.g.*, Ex. B, S-1, Cover Page at 3; *id.* at 60.

---

[9]   Securities and Exchange Commission, Notice of Effectiveness (July 21, 2020), https://www.sec.gov/Archives/edgar/data/0001811882/999999995200001872/xslEFFECTX01/primary_doc.xml.

[10] Securities and Exchange Commission's Office of Investor Education and Advocacy, "What You Need to Know About SPACs – Updated Investor Bulletin" (May 25, 2021) (hereinafter "Bulletin"), http://www.investor.gov/introduction-investing/general-resources/news-alerts/alerts-bulletins/investor-bulletins/what-you.

**E.      PSTH pursues its purpose of completing an initial business combination**

From July through October 2020, PSTH and its team "performed due diligence on more than 20 potential business combination targets in a wide variety of industry sectors" and "entered into non-disclosure or confidentiality agreements in respect of six potential business combination targets."  Ex. C, PSTH, Tender Offer Statement by Issuer (Form SC TO-I) ("Offer to Redeem") at 134 (July 8, 2021).  In October, PSTH began due diligence in connection with a potential purchase of shares of Universal Music Group ("UMG") from its largest holder, Vivendi S.E.  AC ¶ 60.

On June 4, 2021, PSTH announced that it had entered into a Share Purchase Agreement with Vivendi S.E. to purchase 10% of the outstanding shares of UMG for approximately $4 billion. *Id.* ¶¶ 66-67; *see also* Ex. C, Offer to Redeem, at 134-142 (providing a detailed timeline of these interactions).   Ultimately, however, the SEC raised "issues … with several elements of the proposed transaction," including whether it complied with NYSE Rule 102.06, even though that rule defines an initial business combination to include a "stock purchase."[11]  *See* NYSE Listed Company Manual 102.06.   PSTH announced on July 19 that it would not pursue the UMG transaction.  AC ¶ 70.  PSTH is continuing to seek out a business combination in its remaining eight months, through July 22, 2022.  *See id.* ¶¶ 38-39; Ex. A, COI § 9.1.

**F.      Plaintiff belatedly purchases PSTH shares and, led by interested academics, commences this action**

Plaintiff George Assad purchased an undisclosed number of shares of Class A common stock on May 12, 2021, nearly nine months after PSTH disclosed its purpose and the contracts he

---

[11] BusinessWire, "Pershing Square Tontine Holdings, Ltd. Releases Letter to Shareholders" (July 19, 2021), https://www.businesswire.com/news/home/20210718005033/en/Pershing-Square-Tontine-Holdings-Ltd.-Releases-Letter-to-Shareholders (cited in AC ¶ 70).

challenges.  AC ¶¶ 23, 160.  Three months later, well over a year into PSTH's two-year time frame, Plaintiff commenced this action.  Days later, he asserted similar claims against two other SPACs.[12]

Led by two law professors with their own policy ideas about SPAC regulation—former SEC commissioner Robert Jackson of New York University School of Law and John Morley of Yale Law School—Plaintiff alleges that all SPACs are investment companies because they are "engage[d] primarily … in the business of investing … in securities."  AC ¶ 109 (quoting 15 U.S.C. § 80a-3(a)(1)(A)).  Plaintiff's counsel has admitted publicly that these are issues for the SEC to decide and that this case is just a tool to try to prod the SEC into upending the settled regulatory framework for SPACs, a framework with which PSTH has fully complied and upon which countless market participants and investors have relied for decades.  Indeed, Mr. Jackson and Mr. Morley are on record as saying that their aim is that "this litigation will give *regulators* as many tools as possible."[13]  And in opposing a motion to dismiss in one of his related actions, Plaintiff has "urge[d] the Court to issue an order asking the SEC to express [its] views directly."  *Assad v. GO Acquisition Corp.*, No. 21-cv-7076 (JPC) (JLC) (S.D.N.Y), ECF 55 at 1 (filed Oct. 25, 2021).[14]

Plaintiff specifically asserts four claims here.  First, he seeks a declaration that PSTH is an investment company and that PSCM is its investment adviser.  AC ¶¶ 188-91 (Count I).  Second, he seeks damages under Section 36(b) of the ICA, reflecting the allegedly excessive compensation Defendants have received from entering into the contracts at issue.  *Id.* ¶¶ 192-97 (Count II).  Third, he seeks rescission of the same contracts under Section 47(b) of the ICA, on the theory that the

---

[12] *See Assad v. E.Merge Tech. Acquisition Corp., et al.*, No. 21-cv-7072 (JPO) (KNF); *Assad v. GO Acquisition Corp., et al.*, No. 21-cv-7076 (JPC) (JLC).

[13] The Deal, "Drinks With the Deal: NYU's Rob Jackson and Yale's John Morley (Sept. 16, 2021), at 7:01 https://www.thedeal.com/podcasts/drinks-with-the-deal-nyus-rob-jackson-and-yales-john-morley.

[14] Of course, if the SEC wants to initiate a notice-and-comment process to rewrite the regulatory framework around SPACs, it has all the "tools" it needs to do so.  *See supra* at 6 nn. 5, 6.

contracts violate that statute.  *Id.* ¶¶ 198-209 (Count III).  And fourth, he seeks rescission of the same contracts under Section 215(b) of the IAA, on the theory that they are investment adviser contracts that violate other provisions of that statute.  *Id.* ¶¶ 210-17 (Count IV).

Following pre-motion letter practice pursuant to the Court's Individual Practices, Plaintiff amended his complaint to add to Count III a putatively direct claim under ICA Section 47(b), on behalf of a class of Class A common stockholders, to rescind a provision of PSTH's Certificate of Incorporation.  AC ¶¶ 207-08; *see also id.* ¶¶ 160-69; Ex. A, COI § 9.9.  The Court granted leave for the Pershing Square Defendants to file this motion on October 27, 2021.  ECF 59.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In conducting its analysis, the Court should consider documents annexed to the complaint or incorporated by reference, and any matters of which the court may take judicial notice.  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *see also supra* note 2.

## **ARGUMENT**

## I.   **PLAINTIFF LACKS A PRIVATE RIGHT OF ACTION TO ENFORCE ANY OF THE PROVISIONS AT ISSUE**

All of Plaintiff's claims fail as a matter of law because he does not have a private right of action.  "[P]rivate rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286, 288-89 (2001) (looking to statute's "text and structure").  Following *Sandoval*, the Second Circuit has overwhelmingly rejected attempts to read private rights of action into the ICA.  *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (Sections 34(b), 36(a), and 48(a)); *Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 432-33

(2d Cir. 2002) (Sections 26(f) and 27(i)).  That approach stems from three "features of the ICA": (1) the lack of an explicit private right of action creates a "presumption that Congress did not intend one"; (2) Section 42 "explicitly provides for enforcement of all provisions *by the SEC* through investigations and civil suits for injunctions and penalties"; and (3) Congress's express creation of private rights of action in certain provisions of the statute makes clear that it did not intend to create others by implication. *Bellikoff*, 481 F.3d at 116 (citing 15 U.S.C. § 80a-41).

## A.        Declaratory Judgment (Count I)

Plaintiff does not—indeed, cannot—identify any statutory provision that gives him a right to seek a sweeping declaration that PSTH is an investment company under the ICA.  Certainly the Declaratory Judgment Act does not do so; that statute is "procedural only" and requires a separate "legal predicate."  *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012).  And in the few instances where the ICA speaks to the power to "declare," it references solely the "Commission," including specifically in connection with declaring whether a company is an investment company.  For example, the "Commission" is authorized to "declare[]" that a company is not an investment company, notwithstanding the statutory definitions, because it is "primarily engaged in a business or businesses *other than* that of investing."  15 U.S.C. § 80a-3(b) (emphasis added).  Likewise, the "Commission" is empowered to "declare" that a "registered investment company has ceased to be an investment company."  *Id.* § 80a-8(f).  And the SEC is not only entrusted with general enforcement of the statute—it is *specifically* tasked with "enforc[ing] compliance with section 80a-7," which prohibits business by unregistered investment companies. *Id.* § 80a-41(d).  *See generally Northstar Fin. Advisors v. Schwab Invs.*, 615 F.3d 1106, 1110 (9th Cir. 2010) ("To ensure compliance with the requirements of the ICA, Congress gave the SEC broad authority to police violations of the Act.").

The ICA is thus clear that the SEC serves as the gatekeeper in determining whether a company is an investment company and must register as such and be subject to its requirements. Accordingly, numerous courts have rejected the notion that private actors can compel registration. *See, e.g.*, *UFCW Local 1500 Pension Fund v. Mayer*, 895 F.3d 695, 699 (9th Cir. 2018); *Omni Fin. Corp. v. Cohen*, 1994 WL 97125, at *5 (S.D.N.Y. Mar 22, 1994) (collecting cases).[15]

### B.    Section 36(b) (Count II)

Plaintiff also lacks a private right of action under Section 36(b).  Congress in Section 36(b) conferred a right of action on "a security holder of [a] *registered* investment company" to enforce fiduciary duties imposed on an investment adviser of a "*registered* investment company."  15 U.S.C. § 80a-35(b) (emphases added).[16]  But that provision, by its terms, does not encompass PSTH, a company that has never registered as an investment company—because it is not an investment company and the SEC has thus not required it to register as such.

"[W]hen the meaning of the statute's terms is plain," the court's "job is at an end."  *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1749 (2020).  Moreover, it would be nonsensical to read "registered" out of the statute, as Plaintiff seeks to do, not only because of the SEC's explicit gatekeeping role, but also because other provisions governing "registered" investment companies turn on issues with their registration statement.  *See, e.g.*, 15 U.S.C. §§ 80a-8(e), 13(a)(3) (imposing liability on registered investment companies for deviating from investment policy in registration statement).  *See generally Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995) ("identical words used in different parts of the same act are intended to have the same meaning").

---

[15] Even if the ICA were ambiguous, and it is not, the Court can and should decline to exercise jurisdiction over such a declaratory judgment claim in light of the SEC's regulatory role.  *See, e.g.*, *Starr Int'l Co., Inc. v. Am. Int'l Grp., Inc.*, 648 F. Supp. 2d 546, 575 (S.D.N.Y. 2009) (declining to exercise jurisdiction over declaratory judgment claim as to plaintiff's regulatory status where plaintiff could "apply to the SEC").

[16] Most provisions of the ICA are referred to by Section numbers that are one greater than their statutory citation number, *e.g.*, Section 36(b) is 15 U.S.C. § 80a-35(b).

### C.      Section 47(b) (Count III)

Plaintiff similarly misconstrues the scope of Section 47(b), which confers a narrow right of action "for a party to a contract that violates the ICA to seek rescission of that violative contract." *Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99, 109 (2d Cir. 2019). More specifically, Section 47(b) allows for rescission of any contract "that is *made*, or whose *performance involves*, a violation" of the ICA. 15 U.S.C. § 80a-46(b) (emphases added). Plaintiff alleges that the challenged contracts violate various provisions of the ICA. AC ¶¶ 203-07. But all but one of those provisions applies to registered investment companies and thus not to PSTH.[17]

The only predicate violation Plaintiff alleges that is not expressly limited to registered investment companies is Section 8(a), which prohibits unregistered investment companies from engaging in interstate commerce. 15 U.S.C. § 80a-7(a). Plaintiff alleges that the challenged contracts violate Section 8(a) because "they involve sales of securities without proper registration under the ICA…." AC ¶ 135. Put differently, he argues that any business PSTH has ever done is invalid, and so every contract PSTH has ever entered into can be unwound. *See* 15 U.S.C. § 80a-7 (broadly prohibiting any "transactions in interstate commerce *by companies*") (emphasis added).

The Second Circuit squarely rejected that sort of maneuver in *Oxford*. In that case, the intervenors sought rescission of an indenture on the theory that "performance of *any* part of the Indenture … violates Section 7 of the ICA, which prohibits any unregistered investment company to engage in *any* business in interstate commerce." Intervenors-Cross-Claimants-Appellants' Reply Br., *Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 2017 WL 2501184, at *9 (2d Cir. 2017) (No. 16-4061) (emphasis in original). The Second Circuit dismissed the claim, reasoning that

---

[17] *See* 15 U.S.C. § 80a-15(a) ("registered investment company"); *id.* § 80a-16(a) (same); *id.* § 80a-18(d) ("registered management company," a subset of investment companies, *id.* § 80a-4(3)); *id.* § 80a-18(i) ("registered management company"); *id.* § 80a-22(g) ("registered open-end company," a subset of management companies, *id.* § 80a-5(a)); *id.* § 80a-23(a) ("registered closed-end company," also a subset of management companies, *id.* § 80a-5(a)).

"[n]either the terms of the Indenture … nor its performance violate[d] the ICA."  933 F.3d at 109. Rather, the intervenors could at most seek rescission of the contract pursuant to which non-qualified purchasers had obtained shares, *see id.* at 109-10, which had *turned the company into* an investment company.  Here, none of the contracts Plaintiff seeks to rescind rendered PSTH an investment company (nor does Plaintiff allege as much), and Plaintiff cannot point to Section 8's broad prohibitions on transactions by unregistered investment "companies" as a way to rescind as legally invalid every "contract" into which PSTH has ever entered.  Under *Oxford*, a *contract* is not "made," nor does its "performance involve[]," 15 U.S.C. § 80a-46(b), a violation of a provision of the ICA simply because the *company* acted (allegedly improperly) without registration.

*Oxford*'s limitation on Section 47(b) makes sense.  Indeed, the Ninth Circuit declined to recognize any private right of action at all under Section 47(b), precisely because of the serious risk that a shareholder could not only seek to rescind the handful of contracts he sets his sights on, "but also *every* other contract" the company has ever entered into.  *Mayer*, 895 F.3d at 701 (emphasis added); *see also Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 677 F.3d 178, 187 (3d Cir. 2012) (declining to recognize private right of action under Section 47(b)).  The same reasoning counsels against the obliteration of the limitations imposed by *Oxford*, as Plaintiff seeks here.  "If Congress really intended to expose companies" that did not register under the ICA "to lawsuits of this unparalleled magnitude, it would have expressed that intention clearly, not covertly.  Congress, after all, tends not to 'hide elephants in mouseholes.'"  *Mayer*, 895 F.3d at 701 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

### D.  Section 215(b) (Count IV)

Finally, Plaintiff lacks a private right of action under Section 215(b) of the IAA, which is similar to Section 47(b), because he again fails to identify any predicate violation.  Plaintiff points to purported violations of Section 203(a), which prohibits investment advisers from engaging in

interstate commerce "unless registered under this section," and Section 205(a)(1), which provides limitations on compensation to any investment adviser "registered or required to be registered with the Commission." 15 U.S.C. §§ 80b-3(a), 80b-5(a)(1) (cited in AC ¶¶ 215-16). But these alleged violations, which are entirely circular, turn on the threshold determination that PSTH is an investment company under the ICA, a determination Plaintiff lacks standing to seek. Moreover, Plaintiff fails to identify any investment adviser contract. *See infra* at 29-30. Accordingly, Plaintiff cannot assert an IAA claim.

## II.   PLAINTIFF LACKS STANDING TO SUE ON BEHALF OF PSTH

Plaintiff's claims additionally fail because they are all brought derivatively or otherwise on behalf of PSTH, and Plaintiff has not met threshold requirements for bringing such claims.[18]

### A.   Plaintiff fails the contemporaneous ownership rule

Plaintiff lacks standing to assert any of his claims because he was not a "shareholder … at the time of the transaction of which [he] complains," as required under Federal Rule of Civil Procedure 23.1. *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 297 (2d Cir. 2003) (citing Fed. R. Civ. P. 23.1).[19] It is well settled that to seek the rescission of contracts, as he does here, Plaintiff "must have been a shareholder [of PSTH] at the time the terms [of those contracts] 'were established.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 464 (S.D.N.Y. 2013) (quoting *7547 Partners v. Beck*, 682 A.2d 160, 163 (Del. 1996)), *aff'd*, 797 F.3d

---

[18] Whether Plaintiff's claims are direct or derivative is a matter of Delaware law. *AHW Inv. P'ship v. Citigroup, Inc.*, 806 F.3d 695, 699 (2d Cir. 2015) (law of state of incorporation controls). Plaintiff's declaratory relief claim (Count I) is derivative as it seeks a remedy on behalf of, and for harm to, the entire company. *See, e.g.*, *Brookfield Asset Mgmt., Inc. v. Rosson*, 2021 WL 4260639, at *8-9 (Del. Sept. 20, 2021). Plaintiff concedes his claims under Sections 47(b) (Count III) and Section 215(b) (Count IV) are derivative, AC ¶¶ 199, 211, and his new, putative class claim under Section 47(b), *id.* ¶ 207, is a vote dilution and overpayment claim and thus "classically derivative," *Brookfield*, 2021 WL 4260639, at *11-20. Lastly, Plaintiff's Section 36(b) claim (Count II) is brought "on behalf of the Company," AC ¶ 193, and so must satisfy the contemporaneous ownership (though not demand futility) requirement, *see, e.g.*, *Siemers v. Wells Fargo & Co.*, 2007 WL 760750, at *20-21 (N.D. Cal. Mar. 9, 2007) ("Plaintiff … failed to allege that he owned any of the relevant securities on the day the suit began, a requirement.").

[19] Delaware law contains the same requirement. D.G.C.L. § 327; Del. Ch. Ct. R. 23.1(a).

148 (2d Cir. 2015); *see also In re Smiledirectclub, Inc. Derivative Litig.*, 2021 WL 2182827, at \*8 (Del. Ch. May 28, 2021) (same).  Yet all of the contracts at issue were entered into in June and July 2020, long before Plaintiff purchased his shares in May 2021.  *Compare* AC ¶ 23 *with id.* ¶ 133.  Moreover, all of those contracts—and PSTH's business and structure—were fully disclosed in the July 2020 Prospectus, as part of PSTH's IPO.   Plaintiff's claims thus fail the contemporaneous ownership rule.  *See, e.g.*, *Bank of N.Y. Derivative Litig.*, 320 F.3d at 297; *Ucar Int'l v. Union Carbide Corp.*, 2004 WL 137073, at \*7-8 (S.D.N.Y. Jan. 26, 2004).

Plaintiff cannot cure his delay by alleging that the harm is continuing.  The Second Circuit has declined to adopt the "expansive definition of the term 'transaction' that is inherent in the continuing wrong doctrine."  *Bank of N.Y. Derivative Litig.*, 320 F.3d at 298.  The sole authority Plaintiff has cited to the contrary is an out-of-circuit, one-page district court decision from 1972, in which the court held that the plaintiff had standing to challenge a lease *from 1873*.  *See In re Penn Cent. Transp. Co.*, 341 F. Supp. 845, 846 (E.D. Pa. 1972).  That decision merely confirms the wisdom of the Second Circuit's rule.  Indeed, Plaintiff is precisely the sort of opportunistic litigant this rule is meant to bar: he has filed some 35 derivative lawsuits in the last decade, *see* Ex. D, and opportunistically purchased some undisclosed interest in PSTH months after any alleged harm occurred, all in order to serve as a platform for law professors with a policy interest in calling for the categorical invalidation of SPACs.  *See, e.g.*, *Daily Income Fund*, 464 U.S. at 531 n.6 (rule is "prevent[s] the federal courts from being used to litigate purchased grievances").

### B.    Plaintiff fails to plead demand futility

Separately, Plaintiff's derivative claims fail because he has not alleged with particularity why demand on the Board would have been futile, as he must under Delaware law.  *See* Del. Ch. Ct. R. 23.1(a); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991) (state law governs demand requirement).   Plaintiff offers only conclusory allegations that the four Director

Defendants are "personally conflicted with respect to the institution of the suit" due to their alleged "control" by the Sponsor and the possibility that they might lose "compensation."  AC ¶¶ 175-87. But those allegations are not nearly sufficient to rebut the strong presumption of independence. *United Food & Commer. Workers Union v. Zuckerberg*, 2021 WL 4344361 (Del. Sept. 23, 2021). The Pershing Square Defendants further join, and incorporate by reference herein, the arguments made in the Pershing Square Director Defendants' Motion to Dismiss the Amended Complaint.

## III.  PLAINTIFF'S CLAIMS ARE UNTIMELY

Even if Plaintiff had standing, his claims are untimely under the statute of limitations, and his efforts to avoid that inherent untimeliness rest on assertions that are entirely speculative.

### A.  Plaintiff's claims are barred by the statute of limitations

All of Plaintiff's claims are subject to a one-year statute of limitations and accrued when PSTH disclosed the terms of its business and the contracts at issue, in June and July 2020, more than a year before Plaintiff filed suit on August 17, 2021.

*First*, Plaintiff's claims to rescind the challenged contracts under Section 47(b) and Section 215(b) (Counts III and IV) are subject to a one-year statute of limitations period that runs from the date of reasonable discovery, which occurs when the terms of the contracts were established.  *See Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039-40, 1042 (2d Cir. 1992); *Phoenix Four, Inc. v. Strategic Res. Corp.*, 2006 WL 399396, at *5-6 (S.D.N.Y. Feb. 21, 2006) (collecting cases).  Thus, the latest any of these claims could have accrued was July 21, 2020, more than a year before Plaintiff filed suit.  *See* AC ¶ 133 (setting forth contract dates).

*Second*, Plaintiff's Section 36(b) excessive compensation claim (Count II) is subject to a one-year statute of limitations that is tied to "compensation or payments *received*" within the last year.  15 U.S.C. § 80a-35(b)(3) (emphasis added); *see also Kahn*, 970 F.2d at 1038; *Phoenix Four*, 2006 WL 399396, at *6.  Therefore, to assert a timely claim under Section 36(b), Plaintiff "must

plead facts demonstrating the existence of excessive advisory fees" within the one-year period preceding his commencement of this action. *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2006 WL 74439, at *2 (S.D.N.Y. Jan. 11, 2006). But Defendants have not received any "compensation or payments." The only thing Plaintiff alleges Defendants "received" in violation of Section 36(b) are the warrants and units Defendants purchased at the latest on July 21, 2020, pursuant to the challenged contracts. *See, e.g.*, AC ¶¶ 133, 155, 194. Thus, his challenge to those rights as "compensation" Defendants "received" comes too late.

*Third*, Plaintiff's claim for a declaratory judgment (Count I) is subject to the same one-year statute of limitations as his underlying claims. *See 118 E. 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200, 202 (2d Cir. 1982); *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 268-69 (S.D.N.Y. 2008) (collecting cases).

Plaintiff attempts to excuse his delay by pointing to the Sarbanes-Oxley Act, which extends the limitations period to two years for certain federal securities law claims. But that section is limited by its terms to "claims of fraud, deceit, manipulation, or contrivance." 28 U.S.C. § 1658(b); *see, e.g.*, *Phoenix Four*, 2006 WL 399396, at *6 (collecting cases); *Hsu v. UBS Fin. Servs., Inc.*, 2011 WL 3443942, at *5 (N.D. Cal. Aug. 5, 2011), *aff'd*, 507 F. App'x 716 (9th Cir. 2013). The Amended Complaint makes no allegations of fraud.

The continuing wrong doctrine also does not apply because Plaintiff does not allege "continuing violations of the ICA," but rather "the continuing ill effects of an earlier violation." *UFCW Local 1500 Pension Fund v. Mayer*, 2016 WL 6122458, at *10 (N.D. Cal. Oct. 19, 2016), *aff'd*, 895 F.3d 695 (9th Cir. 2018). "[P]erformance under the contract merely affects damages and does not give rise to a new cause of action." *Kahn*, 970 F.2d at 1041.

Lastly, Plaintiff suggests he was permitted to wait until June 2021 because it was only then "definitively clear" that PSTH was an investment company, based upon the announcement of the potential UMG deal. That is a red herring. Plaintiff does not and cannot challenge the terms of that transaction, which did not even occur. Plaintiff challenges PSTH's structure and seeks (1) a determination that PSTH must unwind and restructure itself as an investment company and (2) damages and rescission based on the contracts at issue, because PSTH has *all along* held its assets in government securities and cash equivalents while it pursues an initial business combination. *See, e.g.*, AC ¶ 110 ("Investing in securities is the Company's primary business because that is all the Company has ever done with its assets."). Put simply, Plaintiff was "placed on inquiry notice of [his] claims by the very SEC-mandated disclosure documents" he relies upon now. *Menowitz v. Brown*, 991 F.2d 36, 42 (2d Cir. 1993); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 916 F. Supp. 1343, 1354 n.8 (D.N.J. 1993).

## B.      Alternatively, Plaintiff's claims are unripe

To the extent that Plaintiff attempts to avoid the untimeliness of his claims by speculating about what will or will not take place during the eight months remaining in PSTH's time to effectuate a business combination, any such theory of harm is "entirely contingent on factual circumstances that not only may not occur, but also may moot any decision by the Court." *In re Ebix, Inc. Stockholder Litig.*, 2014 WL 3696655, at *13 (Del. Ch. July 24, 2014). PSTH's operations and the value of Defendants' rights under the contracts are all unsettled and tied to the completion of a business combination, which may not even occur, in which case Defendants will be *out* the tens of millions of dollars they paid for their rights. Ex. B, S-1 at 41; *see supra* at 8-9.[20]

---

[20] Moreover, even if PSTH does complete a business combination, the Sponsor and Director warrants will be worthless if the shares of the post-combination business are worth less than 120% of PSTH's IPO share price during the exercise period, which is unknowable today. *See* AC ¶¶ 37, 84-85; Ex. B, S-1, Cover Page at 1-2; *id.* at 79-80 (warrants provide right to purchase shares at $24 each, or 120% of the $20 IPO share price).

## IV.    PSTH IS NOT AN INVESTMENT COMPANY

Beyond all of these procedural barriers, Plaintiff's claims fail for the fundamental reason that he does not plausibly allege the linchpin of his case: that PSTH is an investment company.

### A.    PSTH is not an investment company under the ICA's plain terms

Plaintiff asserts that PSTH is "engaged primarily" in "the business of investing" in securities under Section 3(a)(1)(A), because it temporarily places its assets in trust, as SEC-approved NYSE Rules require, and the trust in turn holds the assets in government securities and cash equivalents.  AC ¶ 109 (quoting 15 U.S.C. § 80a-3(a)(1)(A)).  It is absurd on its face to suggest that such responsible cash management transforms PSTH into an investment company.

"The key word" in the statutory design is "primarily."  *SEC v. Fifth Ave. Coach Lines, Inc.*, 289 F. Supp. 3, 28 (S.D.N.Y. 1968), *aff'd*, 435 F.2d 510 (2d Cir. 1970).  PSTH is not "primarily" engaged in investing in securities: its explicit and singular purpose and engagement is to complete a business combination within a narrow, two-year timeframe.  AC ¶¶ 38-39; Ex. A, COI § 9.1; Ex. B, S-1, Cover Page at 1; *id.* at 6, 12-14.  That purpose is so central to PSTH that it is legally required to *unwind* if it does not achieve it.  Ex. A, COI § 9.1.  In that event, the Sponsor and directors will be out tens of millions of dollars.  AC ¶¶ 37, 82-85; Ex. B, S-1, Cover Page at 1-2.

The other statutory language is no kinder to Plaintiff's audacious theory.  To "invest" means "to put out money at *risk* in the hope of [future] gain"; "merely putting one's money in the bank, even though one thereby obtains some interest, in and of itself is [not] 'investing … in securities."  *Fifth Ave. Coach Lines*, 289 F. Supp. at 28-30 (citing 15 U.S.C. § 80a-3(a)(1)) (emphasis added).  *Cf. United States v. Savin*, 349 F.3d 27, 36-37 (2d Cir. 2003) (defining "investment company" for purposes of sentencing guideline as "a company that holds securities of other corporations for investment benefits *only*" and "a company or trust engaged in the business of investing in (*and trading*) securities.") (emphases added) (citations omitted).

23

In stark contrast, PSTH merely *holds* "safe, interest-bearing instruments," in a trust account, for a limited period pending its business combination.  Bulletin at 1.  Plaintiff proceeds only under ICA Section 3(a)(1)(A), which refers to a company's "investing" in securities – that is, putting money at risk – but not "holding" securities.  An entity "holding" securities falls under Section 3(a)(1)(C), which Plaintiff does not cite.  15 U.S.C. § 80a-3(a)(1)(C).  Plaintiff does not proceed under that section because it requires him to show that at least 40% of PSTH's assets and income are based on "investment securities," a term that expressly excludes government securities.  *Id.* §§ 80a-3(a)(1)(C), 3(a)(2).  And government securities (and cash equivalents) are all PSTH holds.  AC ¶¶ 7, 45.  That leaves Plaintiff struggling—unsuccessfully—to squeeze PSTH into the category of "investing" in securities under Section 3(a)(1)(A).  But Congress excluded from Section 3(a)(1)(A) entities that merely "hold" securities, rather than "invest" in them, a distinction that is presumed to have meaning.  *See, e.g.*, *United States v. Zukerman*, 897 F.3d 423, 431 (2d Cir. 2018).  And merely "holding" government securities is the only accurate way to describe PSTH's short-term holding of its trust assets.

Plaintiff's sweeping theory is thus belied by the statutory design.  He cannot turn "holding" into "investing" any more than he can turn Treasurys into "investment securities."  His efforts to jam a square peg into a round hole are baseless.

### B.    The SEC's *Tonopah* test confirms that PSTH is not an investment company as a matter of law

That PSTH is not "engaged primarily" in the business of "investing" in securities is further confirmed by the SEC's longstanding five-factor test for determining whether a company is an investment company.  *See In re Tonopah Mining Co.*, 26 S.E.C. 426, at *1 (1947).  Under that test, no reasonable investor would "believe that the principal activity of the company [is] *trading and investing* in securities."  *Id.* at *4 (emphasis added).

PSTH's Historical Development.  From its inception, like all SPACs, PSTH has stated that its purpose is to complete a business combination in a limited time frame (two years) and to "operate the post-combination business or assets for the long term."  Ex. B, S-1 at 60; *id.*, Cover Page at 1-2; *see also* AC ¶¶ 38-39.  That is what its activities have focused on.  *See supra* at 11.  Indeed, PSTH was approved by the SEC and listed on the NYSE on the condition that its "situation will be changed substantially in the foreseeable future," *Tonopah*, 26 S.E.C. 426, at *6—it will complete a business combination, or it will cease to exist.  Ex. B, S-1, Cover Page at 2.

PSTH's Representations of Policy.  Since its inception, PSTH has consistently held itself out as a SPAC and not an investment company.  *See supra* at 6-8.  PSTH expressly affirmed to investors (and the SEC) that it was "not intended for persons who are seeking a return on investments in government securities or investment securities." Ex. B, S-1 at 60.  Moreover, PSTH identified its primary "risk" as having "no operations" and thus "no revenues" "[u]ntil we complete our initial business combination."  *Id.* at 45.  In light of these representations, any reasonable investor would look to PSTH, and SPACs generally, not as a way to obtain profits based on "the slight annual changes in investment income," but as a company whose assets "can increase or decrease substantially as a result of business successes or reverses," namely, its ability to complete its purpose of identifying and effectuating a business combination.  *SEC v. Nat'l Presto Indus.*, 486 F.3d 305, 313 (7th Cir. 2007).

The Activities of PSTH's Officers and Directors.  Plaintiff does not allege that the day-to-day activities of PSTH's officers and directors have anything to do with managing a portfolio of investments—because PSTH does not have one.  *See, e.g.*, *SEC v. Fiore*, 416 F. Supp. 3d 306, 328 (S.D.N.Y. 2019) (denying motion to dismiss under *Tonopah* where company "and its officers … engaged in significant securities trading activity"); *Nat'l Presto Indus.*, 486 F.3d at 313

(distinguishing company from investment companies whose directors and managers "spent most of their time managing the firms' investment portfolios").

The Nature of PSTH's Present Assets.   Although PSTH's assets technically consist of "securities," they are *government* securities and cash equivalents—not investment securities, AC ¶ 45—and they are held simply to preserve capital pending completion of a business combination. Plaintiff observes that these are technically "securities" nonetheless.  *Id.* ¶ 112.  But they depend only on the credit of the United States, making them secure and risk-free investments that investors need not worry about.[21]   *See, e.g.*, *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 131 (2d Cir. 2001) (describing Treasurys as "short-term, risk-free obligations") (citation omitted).  Indeed, the distinction between "securities" and "investment securities" is important in determining reasonable investor perceptions, as the ICA recognizes in adopting separate definitions, and as courts and the SEC have likewise recognized in applying the statute.  *See* 15 U.S.C. §§ 80a-2(a)(36), 80a-3(a)(2); *Nat'l Presto Indus.*, 486 F.3d at 314 (focusing on fact that "more than 60% of Presto's assets were investment securities"); *Tonopah*, 26 S.E.C. 426, at *4 (in finding company was investment company, relying on fact that "investment securities" had long represented 80% of its assets).[22]

Moreover, again, PSTH advised investors *not* to invest in the company if they are seeking a return on securities and made clear that it is holding government securities and cash equivalents pending completion of its business combination, which must occur within two years of its IPO—

---

[21] Plaintiff's claim thus takes one of the *least* salient traits of a SPAC—keeping cash in trust in U.S. Treasurys and cash equivalents to preserve assets in the safest and most effective way—and pretends that it is somehow the *most* salient trait of the SPAC.

[22] In fact, the SEC has provided a safe harbor under Section 3(a)(1)(C), the assets test, where no more than 45% of a company's assets "exclusive of Government securities and cash items" consist of, and no more than 45% of its income is derived from, "securities *other than*: (1) Government securities."  17 C.F.R. § 270.3a-1 (emphasis added).  The reason, of course, is that investment securities are fundamentally different from government securities in terms of risk and return.  *See* Bulletin at 1; *supra* at 24 (discussing distinction between 3(a)(1)(A) and 3(a)(1)(C)).

and less than one year from today.  *See supra* at 6-8.  Under these circumstances, where there is every indication that PSTH's temporary holding of securities "*will* be changed substantially in the foreseeable future," *Tonopah*, 26 S.E.C. 426, at *6 (emphasis added), no reasonable investor would understand that PSTH's temporary placement of its assets in safe, interest-bearing instruments while it pursues its only and stated purpose of completing a business combination transforms its purpose into investing in those securities.  In short, the principal assets of PSTH are not the government securities and cash equivalents it temporarily holds, or the *de minimis* interest it earns on them, but rather the expertise of its team and the potential business combination.  *Nat'l Presto Indus.*, 486 F.3d at 314 ("looking primarily at accounting assets has a potential to mislead" when "substantial assets" take on a different form).

        The Sources of PSTH's Present Income.  Finally, although PSTH's *de minimis* "income" is presently derived from interest on government securities and cash equivalents, this factor likewise definitively points to the conclusion that PSTH is not an investment company because those holdings are not in "investment securities," a distinction that the ICA, SEC, and courts have all given significant weight.  *See Tonopah*, 26 S.E.C. 426, at *6 (relying on fact that all of company's net income was "derived from interest, dividends or trading profits" on portfolio consisting of 94% "investment securities").  And again, investors have every reason to believe that PSTH's "situation will be changed substantially in the foreseeable future." *Id.* at *6.

*      *      *      *      *

        As the above facts and arguments make clear, SPACs are not investment companies.  As the SEC recognized when it allowed SPACs to list—and has implicitly recognized each of the thousand or more times that it approved a SPAC's registration under the general securities laws

and not the ICA—SPACs' structure and requirements protect investors and promote a fair and free market.  SEC Release No. 34-57785, at 3-5; SEC Release No. 34-58228, at 2-4.

The gravity of Plaintiff's assertion to the contrary cannot be overstated.  If he is right, the SEC has for decades approved more than a thousand SPACs without recognizing that they were all investment companies.  Just as common sense dictates that SPACs are not investment companies for all the reasons set forth above, it simply cannot be that the SEC has committed such a massive oversight.  While it may be "possible for an entire industry to be in violation of [a statute] for a long time without the [Agency] noticing," the "more *plausible* hypothesis is that the … industry has been left alone because the character of its … system has been recognized for what it is—a bona fide … system."  *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 510-11 (7th Cir. 2007); *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 157-58 (2012) ("Other than acquiescence, no explanation for the DOL's inaction [was] plausible" where it had "never initiated any enforcement actions … or otherwise suggested that it thought the industry was acting unlawfully" in face of "industry's decades-long practice" of employee classification).

## V.     PLAINTIFF FAILS TO ALLEGE A VIOLATION OF THE ICA

Plaintiff's ICA claims separately fail because, even assuming PSTH were an investment company, he does not plausibly allege that it committed any actual violation of the ICA.

Section 47(b):  As noted above, Section 47(b) does not provide an end-run for shareholders to rescind every contract a company has ever entered into just because the company did not register.  All the remaining provisions on which Plaintiff relies apply to a "registered" investment company, which PSTH is not. *See supra* at 16 n.17.  Regardless, as required by Section 16(a), the directors were all elected by the "holders of the outstanding voting securities," 15 U.S.C. § 80a-16(a), because they were elected by the Class B common stock prior to the IPO, and those were the only shares in existence at that time. *See* AC ¶¶ 102-06.  As to Section 18(i), Plaintiff seeks

reformation of the Certificate of Incorporation, which is not a remedy under that section.  15 U.S.C. § 80a-46(b)(2).  As to his claims under Sections 22(g) and 23(a), those too fail because the Class B shares were issued "for cash."  *Id.* §§ 80a-22(g), 80a-23(a); AC ¶ 109.

Section 36(b):  Plaintiff separately fails to adequately allege facts (as opposed to sheer speculation) to show that the challenged contracts conferred compensation that "bore no relationship to the services rendered."  *Bellikoff*, 481 F.3d at 118.

## VI.   PLAINTIFF FAILS TO ALLEGE A VIOLATION OF THE IAA

Plaintiff's IAA claim similarly fails for want of any plausible violation of that statute. Section 215(b) confers a narrow right on a party "to an *investment advisory contract*" to rescind the contract if it violates another provision of the IAA.  *Clark v. Nevis Cap. Mgmt., LLC*, 2005 WL 488641, at *13-14 (S.D.N.Y. Mar. 2, 2005) (emphasis added).  Plaintiff seeks to rescind the FPA and SWA under this section, yet Plaintiff nowhere alleges that the parties to those contracts—the Sponsor and the Pershing Square Funds—are investment advisers.  He observes that *PSCM* is (and it is registered as such under the IAA), but PSCM is not a party to the contracts—or even this lawsuit. AC ¶¶ 2, 133.  That failure requires dismissal of the IAA claim.  *See Bd. of Governors of Fed. Res. Sys. v. Inv. Co. Inst.*, 450 U.S. 46, 50-51 (1981); *Clark*, 2005 WL 488641, at *14 (dismissing IAA claim for lack of "factual allegations from which it might be inferred that [plaintiff] was a party to an investment advisory contract with [defendant]").  Recognizing as much, Plaintiff makes a single, conclusory allegation about a "multi-party contract."  AC ¶ 56. But the *actual* contracts he cites by their terms do not include PSCM as a party, and thus Plaintiff's conclusory (and false) allegation must be disregarded.  *See, e.g.*, *KDH Consulting Grp., LLC v. Iterative Cap. Mgmt. L.P.*, 2020 WL 7251172, at *10 (S.D.N.Y. June 29, 2020).

Separately, even if Plaintiff could invoke Section 215(b), he fails to identify a predicate provision that the FPA or SWA supposedly violates.  Plaintiff cites Sections 203(a) and 205(a)(1).

29

AC ¶¶ 215-16 (citing 15 U.S.C. §§ 80b-3, 80b-5(a)).  Yet, again, the only investment adviser he identifies is PSCM, which is "registered under" the IAA in compliance with Section 203(a).  15 U.S.C. § 80b-3.  Likewise, he fails to establish how PSCM has entered into any "investment advisory contract"—again, it is not in any contract with PSTH—that could result in a violation of Section 205(a)(1).  *Id.* § 80b-5(a).

More fundamentally, all of Plaintiff's IAA allegations rest on the premise that PSTH is an investment company.  But it is not.  *See supra* at 23-28.

## VII.  PLAINTIFF'S DECLARATORY JUDGMENT AND "DIRECT" CLAIMS ARE IN THE WRONG FORUM

Finally, Plaintiff's declaratory judgment claim (Count I) and his newly asserted claim on behalf of a class of holders of Class A common stock (Count III ¶ 207) fail because they are brought in the wrong forum.  Under the Certificate of Incorporation, both claims are subject to a forum selection clause that specifies Delaware Chancery Court as the exclusive forum for such disputes.  Ex. A, COI § 12.1.  That clause is enforceable because it was reasonably communicated to Plaintiff, is mandatory, covers the claims and parties involved, and Plaintiff does not attempt to and cannot rebut the resulting presumption of enforceability.  *See, e.g.*, *KDH Consulting*, 2020 WL 7251172, at *6-8.

## CONCLUSION

For the foregoing reasons, the Court should grant the Pershing Square Defendants' motion and dismiss the Amended Complaint with prejudice.

Dated: November 4, 2021
     New York, New York

Roberta A. Kaplan
Jenna M. Dabbs
John C. Quinn
D. Brandon Trice
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jdabbs@kaplanhecker.com
jquinn@kaplanhecker.com
btrice@kaplanhecker.com

*Attorneys for the Pershing Square Defendants*