# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GEORGE ASSAD, Derivatively on Behalf of PERSHING SQUARE TONTINE HOLDINGS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> PERSHING SQUARE TONTINE HOLDINGS, LTD., <br><br> Nominal Defendant, <br><br> v. <br><br> PERSHING SQUARE TH SPONSOR, LLC, LISA GERSH, MICHAEL OVITZ, JACQUELINE D. RESES, JOSEPH S. STEINBERG, PERSHING SQUARE, L.P., PERSHING SQUARE INTERNATIONAL, LTD., AND PERSHING SQUARE HOLDINGS, LTD., <br><br> Defendants. | No. 21-CV-06907(AT)(BCM) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LISA GERSH, MICHAEL OVITZ, JACQUELINE D. RESES, AND JOSEPH S. STEINBERG'S MOTION TO DISMISS

**CADWALADER, WICKERSHAM & TAFT LLP**
Nicholas A. Gravante, Jr. (Nicholas.Gravante@cwt.com)
Karen C. Dyer (Karen.Dyer@cwt.com)
Amanda L. Devereux (Amanda.Devereux@cwt.com)
200 Liberty Street
New York, New York 10281
Tel.: (212) 504-6000
Fax: (212) 504-6666

*Attorneys for Defendants Lisa Gersh, Michael Ovitz,*
*Jacqueline D. Reses, and Joseph S. Steinberg*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

RELEVANT BACKGROUND ............................................................................................... 2

ARGUMENT ........................................................................................................................... 4

   I.   COUNTS III AND IV ARE DERIVATIVE
        CLAIMS WHICH SHOULD BE DISMISSED
        BECAUSE THE AMENDED COMPLAINT
        MAKES NO PARTICULARIZED ALLEGATIONS
        SHOWING DEMAND WOULD BE FUTILE ......................................................... 5

       A.   The Amended Complaint Does Not
           Allege that a Majority of the PSTH Directors
           Received a Material Personal Benefit ......................................................... 7

       B.   The Amended Complaint Fails to Allege
           Facts to Establish that the PSTH Directors
           Face a Substantial Likelihood of Liability on
           Any Claims that Would be the Subject of the Litigation Demand ........... 10

       C.   The Amended Complaint Fails to Plead with
           Particularity that the PSTH Directors Lack
           Independence from PSTH's Sponsor ......................................................... 13

  II.   COUNT II FAILS TO STATE A CLAIM
        UNDER SECTION 36(b) OF THE ICA ........................................................... 15

       A.   PSTH is Not a Registered Investment Company ....................................... 15

       B.   The PSTH Directors Are Not Affiliated
           Persons under Section 36(b) of the ICA ................................................... 16

       C.   Plaintiff's Claims under Section 36(b) Are Untimely ............................... 17

       D.   Plaintiff Has Failed to Allege Excessive Fees .......................................... 17

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ................................................................................ 6

*City of Birmingham Ret. & Relief Sys. v. Good*,
177 A.3d 47 (Del. 2017) ................................................................................ 13

*Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*,
68 F. Supp. 3d 486 (S.D.N.Y. 2014) .............................................................. 10

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
694 F.2d 923 (2d Cir. 1982) .......................................................................... 18

*Grobow v. Perot*,
539 A.2d 180 (Del. 1988) .............................................................................. 15

*Halpert Enters., Inc. v. Harrison*,
362 F. Supp. 2d 426 (S.D.N.Y. 2005) .............................................................. 5

*In re AllianceBernstein Mut. Fund Excess. Fee Litig.*,
2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) ...................................................... 17

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009) ........................................................................ 11

*In re Evergreen Mut. Funds Fee Litig.*,
423 F. Supp. 2d 249 (S.D.N.Y. 2006) ..................................................... 9, 10, 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
922 F. Supp. 2d 445 (S.D.N.Y. 2013),
*aff'd*, 797 F.3d 148 (2d Cir. 2015) .................................................................. 14

*In re Gen. Motors Class H S'holders Litig.*,
734 A.2d 611 (Del. Ch. 1999) .......................................................................... 9

*In re Goldman Sachs Mut. Funds*,
2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ...................................................... 9

*In re Lear Corp. S'holder Litig.*,
967 A.2d 640 (Del. Ch. 2008) ........................................................................ 12

*In re Pfizer Inc. Derivative Sec. Litig.*,
503 F. Supp. 2d 680 (S.D.N.Y. 2007),
*aff'd*, 307 F. App'x 590 (2d Cir. 2009) .......................................................... 1, 3

*Jones v. Harris Assocs., L.P.*,
559 U.S. 335 (2010) ...................................................................................... 18

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ........................................................................................... 5

*Krinsk v. Fund Asset Mgmt., Inc.*,
   1986 WL 205 (S.D.N.Y. May 9, 1986) ............................................................ 17

*McElrath v. Kalanick*,
   224 A.3d 982 (Del. 2020) ........................................................... 12, 13, 14

*Patel v. Duncan*,
   2021 WL 4482157 (Del. Ch. Sept. 30, 2021), *as corrected* (Oct. 4, 2021) ............................ 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Lundgren*,
   579 F. Supp. 2d 520 (S.D.N.Y. 2008) ............................................................ 11, 14

*Rahbari v. Oros*,
   732 F. Supp. 2d 367 (S.D.N.Y. 2010) ............................................................ 12

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) ............................................................................. 6

*RCM Sec. Fund, Inc. v. Stanton*,
   928 F.2d 1318 (2d Cir. 1991) ....................................................................... 6

*Robotti & Co., LLC v. Liddell*,
   2010 WL 157474 (Del. Ch. Jan. 14, 2010) .................................................... 9

*Steinberg v. Janus Capital Mgmt., LLC*,
   457 F. App'x 261 (4th Cir. 2011) .................................................................. 17

*Tilden v. Cunningham*,
   2018 WL 5307706 (Del. Ch. Oct. 26, 2018) ................................................ 9

*United Food & Comm. Workers Union v. Zuckerberg*,
   2021 WL 4344361, (Del. Sept. 23, 2021) ................................................ *passim*

*United Food & Comm. Workers Union v. Zuckerberg*,
   250 A.3d 862 (Del. Ch. 2020),
   *aff'd*, 2021 WL 4344361  (Del. Sept. 23, 2021) .......................................... 11

*Verkouteren v. Blackrock Fin. Mgmt.*,
   1999 WL 511411 (S.D.N.Y. July 20, 1999),
   *aff'd*, 208 F.3d 204 (2nd Cir. 2000) .......................................................... 14

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008) ........................................................................... 13

## **Statutes**

15 U.S.C. §§ 80a-1, *et seq.* ..................................................................... *passim*

15 U.S.C. § 80a-2(a)(3)........................................................................... 15, 16
15 U.S.C. § 80a-35(a) ...................................................................................... 17
15 U.S.C. § 80a-35(b) .............................................................................. *passim*
15 U.S.C. § 80a-36(a)(1)........................................................................... 16, 17
15 U.S.C. §§ 80b-1, *et seq.* ..................................................................... 1, 2, 10
8 Del. Code § 102(b)(7) .......................................................................... 11, 12

## **Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................... 1, 4
Fed. R. Civ. P. 23.1 ............................................................................ 1, 2, 4, 5

## INTRODUCTION

Defendants Lisa Gersh, Michael Ovitz, Jacqueline Reses, and Joseph Steinberg (the "**PSTH Directors**"), through counsel, submit this memorandum of law in support of their motion to dismiss Plaintiff George Assad's Amended Complaint ("**Amended Complaint**" or "**Am. Compl.**") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1.  The PSTH Directors also join in and hereby incorporate by reference the Memorandum of Law in Support of the PSTH Defendants' Motion to Dismiss (the "**PSTH Motion to Dismiss**") (ECF 63).

The PSTH Directors are independent directors of Nominal Defendant Pershing Square Tontine Holdings, Ltd. ("**PSTH**"), a Special Purpose Acquisition Company ("**SPAC**") formed in July 2020 for the purpose of seeking an "Initial Business Combination" as defined by PSTH's Certificate of Incorporation.[1]  Count I of the Amended Complaint seeks a declaratory judgment that PSTH is an "investment company" under the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1, *et seq.* ("**ICA**"), and that non-party Pershing Square Capital Management, L.P. ("**PSCM**") is an "investment advisor" to PSTH under the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-1, *et seq.* ("**IAA**").  Am. Compl. ¶¶ 190-191.  In Count II, Plaintiff attempts to assert a claim pursuant to Section 36(b) of the ICA, which permits security holders of *registered* investment companies to bring claims to enforce fiduciary duties of investment advisors.  *See* Am. Compl. ¶¶

---

[1]     *See* Am. Compl. ¶¶ 38-39;  Declaration of Jenna M. Dabbs dated November 4, 2021 ("**Dabbs Decl.**") (ECF 64) (submitted in support of the PSTH Motion to Dismiss), Ex. A (Pershing Square Tontine Holdings, Ltd., Second Amended and Restated Certificate of Incorporation, § 4.3(b)(i) ("**Certificate of Incorporation**")).  The Certificate of Incorporation is quoted and referenced throughout the Amended Complaint, *see, e.g.*, Am. Compl.  ¶¶ 38, 39 nn.3-4, 51, 59 n.19, 102 n.49, 105 n.50, 177 n.76, and is, therefore, incorporated by reference therein.  *See In re Pfizer Inc. Derivative Sec. Litig.*, 503 F. Supp. 2d 680, 682-83 (S.D.N.Y. 2007) ("In addition to the facts set forth in the complaint, the Court may also consider documents attached thereto and/or incorporated by reference therein, as well as matters of public record."), *aff'd*, 307 F. App'x 590 (2d Cir. 2009) (citation omitted).

192-197.  In Counts III and IV, Plaintiff attempts to assert derivative claims pursuant to Section 47(b) of the ICA and Section 215(b) of the IAA.  Am. Compl. ¶¶ 198-217.

Plaintiff's claims all rely on a single, unfounded allegation: that PSTH is an "investment company" under the ICA.  Without this allegation, the rest of Plaintiff's claims fall like a house of cards.  As discussed in the PSTH Motion to Dismiss, the Amended Complaint is fatally flawed and must be dismissed in its entirety because, *inter alia*, as a matter of law, PSTH is decidedly *not* an investment company, because Plaintiff's claims are not ripe for adjudication, and because Plaintiff lacks standing to bring his claims in the first place.

Moreover, as discussed in detail below, Plaintiff's derivative claims in Counts III and IV fail as a matter of law because Plaintiff did not make a demand on PSTH's board of directors before filing those claims and the Amended Complaint contains no particularized allegations establishing that such a demand would be futile, as required by Federal Rule of Civil Procedure 23.1.  Further, Count II, which attempts to assert a claim under Section 36(b) of the ICA, fails to state a claim for which relief can be granted because PSTH is not a registered investment company and because the PSTH Directors are not "affiliated persons" of a registered investment company.  Accordingly, for the reasons set forth below and in the PSTH Motion to Dismiss, the Court should dismiss the Amended Complaint in its entirety and with prejudice.

## RELEVANT BACKGROUND

The relevant background is set forth in further detail in the PSTH Motion to Dismiss, which the PSTH Directors hereby incorporate by reference.  Certain points, however, are worth emphasizing here.  After receiving SEC approval, shares of PSTH began trading publicly on the New York Stock Exchange ("**NYSE**"), pursuant to NYSE listing rules governing SPACs, in an initial public offering ("**IPO**") on July 22, 2020.  *See* Am. Compl. ¶ 36.  As is typical with SPACs, PSTH's Certificate of Incorporation provides that PSTH must enter into an "Initial Business

Combination" within 24 months of its IPO (or within 30 months of its IPO if a letter of intent has been executed). *See id.* ¶¶ 38-39.

One day before the IPO, on July 21, 2020, PSTH entered into various agreements, including i) a Director Warrant Purchase Agreement; and ii) Director Forward Purchase Agreements (collectively, the "**Directors' Agreements**"). *See id.* ¶¶ 82, 85. Pursuant to the Director Warrant Purchase Agreement, the PSTH Directors used personal funds totaling $2,837,500 to purchase Director Warrants for PSTH shares. *See id.* ¶ 88; Dabbs Decl. Ex. B (PSTH Amended Prospectus (Form S-1/A) (July 16, 2020) ("**Prospectus**")) at 12.[2] The pricing for the Director Warrants was set at fair market value by an independent third party. *See* Am. Compl. at ¶ 88; Prospectus at 11-12. The Director Warrants, which will only become exercisable if PSTH enters into an Initial Business Combination within the time allotted in its Certificate of Incorporation, allow the PSTH Directors to purchase shares of the post-combination business at a price equal to 120% of PSTH's share price at the time of PSTH's IPO. *See* Am. Compl. ¶ 97; Prospectus at 16. Thus, if PSTH does not enter into an Initial Business Combination, or if shares of the post-combination business are worth less than 120% of PSTH's IPO share price, the Director Warrants will be worthless and the PSTH Directors will lose their investment.

Additionally, pursuant to the Director Forward Purchase Agreements, two of the four PSTH Directors, Ovitz and Reses, agreed to use personal funds to purchase a total of 300,000 Forward Purchase Units for $6 million prior to PSTH's Initial Business Combination. Am. Compl. ¶ 82. Each Director Forward Purchase Unit consists of one Class A Share and one-third of one redeemable warrant. *See id.* ¶ 77; Prospectus, Cover Page at 1. If PSTH fails to enter into an

---

[2]    The Prospectus is quoted and referenced throughout the Amended Complaint, *see, e.g.*, Am. Compl. ¶¶ 39 n.3, 44 n.6., and is, therefore, incorporated by reference therein. *See Pfizer*, 503 F. Supp. 2d at 682-83.

Initial Business Combination, any warrants attached to the Forward Purchase Units will—like the Director Warrants—become worthless, and the shares attached to the Forward Purchase Units will be redeemable on the same terms as all PSTH shares, *i.e.*, at a share price of approximately $20 per share.  *See* Prospectus at 7.  None of the PSTH Directors have received any fees or other compensation from or related to PSTH.  *Id*. at 140.

Plaintiff George Assad initially purchased shares of PSTH long after the IPO, in or around May 12, 2021.  Am. Compl. ¶ 170.  Plaintiff admits that he did not make a demand on the PSTH Directors prior to filing suit.  *See id.* ¶ 172.

In connection with Counts II-IV of the Amended Complaint, with respect to the PSTH Directors, Plaintiff asks the Court to i) rescind the Directors' Agreements; ii) declare the Director Warrants void; iii) enjoin the PSTH Directors from purchasing Forward Purchase Units; iv) enjoin the PSTH Directors from exercising any rights in connection with the Director Warrants or the Director Warrant Purchase Agreement; v) order the return to PSTH of any equity or warrants issued to the PSTH Directors pursuant to the Directors' Agreements; vi) rescind the portion of PSTH's Certificate of Incorporation that grants holders of PSTH's Class B common stock exclusive rights to elect and remove directors prior to an Initial Business Combination; and vii) order damages for all compensation paid "or payments of a material nature" made by PSTH to the PSTH Directors in breach of their fiduciary duties to PSTH.  *See* Am. Compl., Prayer for Relief, ¶¶ C, D, F-G, K-L.

## **ARGUMENT**

As discussed below, Counts III and IV of the Amended Complaint should be dismissed because Plaintiff fails to allege with particularity that demand would be futile, as required by Federal Rule of Civil Procedure 23.1.  Additionally, Count II should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff does not, and cannot,

allege that PSTH is a registered investment company or that the PSTH Directors are "affiliated persons" of a registered investment advisor under Section 36(b) of the ICA.

## I.  COUNTS III AND IV ARE DERIVATIVE CLAIMS WHICH SHOULD BE DISMISSED BECAUSE THE AMENDED COMPLAINT MAKES NO PARTICULARIZED ALLEGATIONS SHOWING DEMAND WOULD BE FUTILE

Counts III and IV of the Amended Complaint are derivative claims which must comply with Federal Rule of Civil Procedure 23.1.  *See Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y. 2005).  Pursuant to Rule 23.1, the Amended Complaint must "***state with particularity*** . . . any effort by the plaintiff to obtain the desired action from the directors . . . and . . . the reasons for not obtaining the action or not making the effort" to do so.  Fed. R. Civ. P. 23.1 (emphasis added).  Here, Plaintiff merely asserts in conclusory terms that he did not demand action from the PSTH Directors before filing his derivative suit because demand would have been futile. Am. Compl. ¶ 175.  However, Rule 23.1 requires Plaintiff to allege with particularity the reasons why demand would have been futile in this case.  *See* Fed. R. Civ. P. 23.1.  Particularity is a stringent requirement and conclusory allegations will not suffice.  *Halpert*, 362 F. Supp. 2d at 429-30 ("a plaintiff must plead the futility of demand with specific factual allegations" and "may not simply rely on conclusory allegations"; dismissing shareholder derivative complaint; plaintiff's allegations that directors received fees were insufficient to establish demand futility because there were no particularized allegations showing that such fees were excessive).

Because PSTH is incorporated under Delaware law, Am. Compl. ¶ 24, this Court must apply Delaware law to determine whether Plaintiff has established demand futility.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991) ("a court that is entertaining a derivative action under [the ICA] must apply the demand futility exception as it is defined by the law of the State of incorporation"); *Halpert*, 362 F. Supp. 2d at 430 ("Fed. R. Civ. P. 23.1 outlines the

procedural rules with which a derivative action in federal court must comply, but state law provides the substantive law governing demand requirements") (citing *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991)).

The Delaware Supreme Court recently set forth a universal three-part demand futility test for cases governed by Delaware law. *See United Food & Comm. Workers Union v. Zuckerberg*, 2021 WL 4344361, at *17 (Del. Sept. 23, 2021) (hereinafter, "*Zuckerberg*") (affirming dismissal of shareholder derivative action; allegations that directors were beholden to company CEO did not establish demand futility where, *inter alia*, complaint did not allege that directors' board positions were financially or personally material to them).[3] The *Zuckerberg* test requires courts to address the following three questions, on a director-by-director basis:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face

---

[3] Prior to *Zuckerberg*, Delaware courts embraced two tests to determine whether demand would be futile. In cases challenging affirmative decisions made by the same board of directors considering the demand, courts applied the test set forth in *Aronson v. Lewis*, which asked whether "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d 805, 811 (Del. 1984). In all other cases, courts applied the test set forth in *Rales v. Blasband*, which asked whether the plaintiff had alleged particularized facts "creat[ing] a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d 927, 934 (Del. 1993). Following *Zuckerberg*, it is no longer necessary to determine whether the *Aronson* or *Rales* tests govern allegations of demand futility. *See Patel v. Duncan*, 2021 WL 4482157, at *18 (Del. Ch. Sept. 30, 2021), *as corrected* (Oct. 4, 2021) ("*Zuckerberg*'s three-pronged test blends *Aronson* and *Rales* and is 'consistent with and enhances' those cases and their progeny.") (quoting *Zuckerberg*, 2021 WL 4344361 at *17) (dismissing derivative claims for failure to plead demand futility).

a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

*Id.* at *17.   Demand is not excused as futile unless the answer to one or more of the three questions is "yes" for at least half of the members of the board.  *Id.*

The "cardinal precept" of Delaware law is "that independent and disinterested directors are generally in the best position to manage a corporation's affairs, including whether the corporation should exercise its legal rights."  *Id.* at *14.   Thus, to establish that demand would be futile, plaintiffs "must plead with particularity facts establishing that a majority of the directors on the demand board are subject to an influence that would sterilize their discretion with respect to the litigation demand."  *Id.*   As discussed below, Plaintiff's allegation of demand futility fails as a matter of law because the Amended Complaint contains only conclusory allegations regarding the PSTH Directors.

### A. The Amended Complaint Does Not Allege that a Majority of the PSTH Directors Received a Material Personal Benefit

#### 1. The PSTH Directors Have Not Received—and May Never Receive—*Any* Compensation from or Relating to PSTH

The answer to the first question in the *Zuckerberg* test, "whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand," 2021 WL 4344361, at *17, is a resounding ***no***.   In lieu of directors' fees or other compensation, the PSTH Directors were permitted to use their personal funds to purchase Director Warrants at a fair market value determined by an independent third party.  *See* Am. Compl. ¶¶ 88-89; Prospectus at 11-12, 16.

In total, the PSTH Directors invested $2,837,500 of their personal funds to purchase Director Warrants.  Am. Compl. ¶¶ 88-89; Prospectus Cover Page at 1.  PSTH Directors Ovitz and Reses have also committed to making additional investments in PSTH by agreeing to purchase,

for $6 million prior to the Initial Business Combination, a total of 300,000 Forward Purchase Units consisting of one Class A Share and one-third of one redeemable warrant. *See* Am. Compl. ¶ 82; Prospectus Cover Page at 1.

If PSTH enters into an Initial Business Combination within the time allotted, the Director Warrants will permit the PSTH Directors to purchase shares of the post-combination business at a price equal to 120% of PSTH's IPO share price. Prospectus at 12. However, if there is no Initial Business Combination—a prospect that becomes increasingly likely the longer this litigation drags on—or, if shares in the post-combination entity are worth less than 120% of PSTH's IPO share price, the Director Warrants will be worthless. The shareholders, including Plaintiff, however, retain their rights to redeem their shares. Thus, the PSTH Directors would not only receive no compensation, they would lose their entire investment in the Director Warrants. That is not compensation—not for tax purposes, and not in any other respect.

Similarly, any warrants attached to the Director Forward Purchase Units will only become exercisable *if* there is an Initial Business Combination. Prospectus Cover Page at 1. Absent an Initial Business Combination, such warrants are worthless and any shares attached to Director Forward Purchase Units will simply become redeemable on the same terms as all PSTH shares, *i.e.*, for approximately $20 per share. *Id.* Notably, the Amended Complaint does not even allege that any Director Forward Purchase Units have been purchased yet. Am. Compl. ¶¶ 182-183.

Because the PSTH Directors have not yet received any compensation—and may never receive any compensation, a structure intentionally designed to align the PSTH Directors' interests with the interests of all of PSTH's shareholders—the Amended Complaint fails to allege that the PSTH Directors have received a "material personal benefit" that would render demand futile.

**2. Bare Assertions that the Director Warrants Would be "Worthless" If Rescinded Are Insufficient to Excuse Demand**

Even assuming *en arguendo* that the PSTH Directors have received compensation (and they have not), as a matter of law, bare assertions regarding director compensation are insufficient to excuse demand and cannot satisfy the first *Zuckerberg* prong. *See In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 263 (S.D.N.Y. 2006); *see also In re Goldman Sachs Mut. Funds*, 2006 WL 126772, at *11 (S.D.N.Y. Jan. 17, 2006) (dismissing complaint; holding "mere allegations of substantial compensation are insufficient" to excuse demand.).   Accordingly, Plaintiff's assertion that demand would be "futile" because the Director Warrants and Director Forward Purchase Units will be "worthless" if rescinded, Am. Compl. ¶¶ 180-183, fails as a matter of law. *See Tilden v. Cunningham*, 2018 WL 5307706, at *12 (Del. Ch. Oct. 26, 2018) (dismissing complaint; holding allegations that "director's holdings might be devalued as a result of derivative litigation" were insufficient to establish demand futility).

Moreover, director compensation "alone cannot create a reasonable basis to doubt that director's impartiality." *Robotti & Co., LLC v. Liddell*, 2010 WL 157474, at *15 (Del. Ch. Jan. 14, 2010) (rejecting claim of demand futility and dismissing complaint where plaintiff failed to allege that director compensation was of material importance to individual directors, notwithstanding that directors had received annual compensation of up to $100,000 per year and stock options).  Rather, the alleged "personal benefit must be 'of a sufficiently material importance, in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties to the [corporation's] shareholders without being influenced by her overriding personal interest[.]'"  *Goldman Sachs*, 2006 WL 126772, at *11 (quoting *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999)).

It is well-established that "[m]ere allegations of substantial compensation are insufficient to establish futility." *Evergreen*, 423 F. Supp. 2d at 263 (citations and internal quotation marks omitted) (dismissing complaint, finding plaintiff failed to establish demand futility for claim under Section 215 of the IAA, notwithstanding that trustee defendants had each received hundreds of thousands of dollars in compensation from, and served at the pleasure of, the investment adviser defendant). Accordingly, the allegations in the Amended Complaint are insufficient to plead demand futility.

Further, Plaintiff's argument with respect to the Director Warrants misses a crucial point: in the absence of an Initial Business Combination, ***all of the PSTH Directors would benefit from rescission***. "Rescission of a contract repudiates the transaction and seeks to place the parties in the status quo. Inherent in the remedy of rescission is the return of the parties to their pre-contract positions." *Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*, 68 F. Supp. 3d 486, 497-98 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, rescission of the Director Warrant Agreements would result in the return of the PSTH Directors' investment of $2,837,500, regardless of whether there is an Initial Business Combination. Without rescission, however, the PSTH Directors stand to lose their $2,837,500 investment unless an Initial Business Combination is achieved and shares of the post-combination business reach 120% of the value of PSTH's IPO price. Accordingly, Plaintiff's argument with regard to the Director Warrants is illogical because rescission would put the PSTH Directors in a ***better*** position if there is no Initial Business Combination.

### B. The Amended Complaint Fails to Allege Facts to Establish that the PSTH Directors Face a Substantial Likelihood of Liability on Any Claims that Would be the Subject of the Litigation Demand

The second question under *Zuckerberg* is whether the PSTH Directors individually face a "substantial likelihood of liability on any of the claims that would be the subject of the litigation

demand." *Zuckerberg*, 2021 WL 4344361, at \*17.   "[T]he inquiry should focus on whether" Plaintiff pled "particularized facts regarding the directors that create a sufficient likelihood of personal liability[.]" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Lundgren*, 579 F. Supp. 2d 520, 534 (S.D.N.Y. 2008) (dismissing complaint for lack of pre-suit demand).

To satisfy this prong in *Zuckerberg*, the Amended Complaint must "plead facts supporting a reasonable inference" that the PSTH Directors "either harbored self-interest adverse to the stockholders' interest, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith." *United Food & Comm. Workers Union v. Zuckerberg*, 250 A.3d 862, 896 (Del. Ch. 2020), *aff'd*, 2021 WL 4344361  (Del. Sept. 23, 2021); *see also In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009) ("Demand is not excused solely because the directors would be deciding to sue themselves. Rather, demand will be excused based on a possibility of personal director liability only in the rare case when a plaintiff is able to show director conduct that is so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.") (footnotes and internal quotation marks omitted).   Plaintiff does not, and cannot, claim that any of the foregoing applies to any of the PSTH Directors.  The PSTH Directors do not face a substantial likelihood of personal liability, and Plaintiff appears to concede this point, as the Amended Complaint makes no allegations, conclusory or otherwise, as to the liability of the PSTH Directors.  For example, Plaintiff makes no claims with regard to Board oversight or management or the lack thereof.

Additionally, Delaware law permits corporations, in their certificates of incorporation, to limit directors' personal liability.  *See* Delaware General Corporate Law ("**DGCL**") 102(b)(7);

*Zuckerberg*, 2021 WL 4344361, at *8-*9.[4]   PSTH's Certificate of Incorporation provides, in relevant part:

> A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL as the same exists or may hereafter be amended.

Dabbs Decl., Ex. A (Certificate of Incorporation), § 8.1.

Thus, even if the Amended Complaint had made allegations regarding the PSTH Directors' liability, such allegations would need to amount to knowing acts of bad faith to overcome the exculpation clause contained in PSTH's certificate of incorporation.  *See McElrath v. Kalanick*, 224 A.3d 982, 987 (Del. 2020) (affirming dismissal of derivative action where "a majority of the board was disinterested because it had no real threat of personal liability due to Uber's exculpatory charter provision"); *see also In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 (Del. Ch. 2008) (dismissing complaint; holding that where certificate of incorporation contains provision pursuant to DGCL 102(b)(7) , "plaintiffs [must] plead particularized facts supporting an inference that the directors committed a breach of their fiduciary duty of loyalty" by "act[ing] in bad faith"); *see also Rahbari v. Oros*, 732 F. Supp. 2d 367, 378 (S.D.N.Y. 2010) (dismissing action; stating "[W]here directors were contractually or otherwise exculpated from liability for certain conduct, then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim

---

[4]   DGCL 102(b)(7) provides that a certificate of incorporation may contain: "A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit."   8 Del. Code § 102(b)(7).

against the directors based on particularized facts.") (quoting *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (affirming dismissing of derivative action)) (emphasis in original).

Further, the exculpatory provision in PSTH's Certificate of Incorporation protects the PSTH Directors from due care violations and thus "the plaintiff must plead with particularity that the directors acted with scienter, meaning they had actual or constructive knowledge that their conduct was legally improper." *McElrath*, 224 A.3d at 991 (quoting *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017) (affirming dismissal of derivative action)). This requires "pleading bad faith," *i.e.*, that a director's conduct was "motivated by an actual intent to do harm or when there is a an intentional dereliction of duty, a conscious disregard for one's responsibilities." *Id.* (quotation omitted). The Amended Complaint contains no facts sufficient to satisfy this high bar.

Finally, the PSTH Directors face no personal liability for the Amended Complaint's rescission claims, and their liability for the breach of fiduciary duty claims is limited by statute to "the amount of compensation or payments received." 15 U.S.C. § 80a-35(b)(3). As the PSTH Directors have not received anything, they face no liability with regard to any alleged breach of fiduciary duty.

### C. The Amended Complaint Fails to Plead with Particularity that the PSTH Directors Lack Independence from PSTH's Sponsor

Plaintiff attempts to answer the third prong of the *Zuckerberg* test—which asks whether a director "lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand," *Zuckerberg*, 2021 WL 4344361, at *17—by pointing to Pershing Square TH Sponsor, LLC's (the "Sponsor") ability to elect and remove the PSTH Directors. Am. Compl. ¶ 177. This attempt

fails as a matter of law.  The ultimate question regarding director independence is "whether due to the relationship or other circumstances, the director would be more willing to risk his or her reputation than risk the relationship." *Pirelli*, 579 F. Supp. 2d at 530.  General allegations relating to "control" over directors are insufficient.  *In re Facebook, Inc., IPO Sec. & Derivative Litig*., 922 F. Supp. 2d 445, 470 (S.D.N.Y. 2013) (dismissing complaint, finding no demand futility), *aff'd*, 797 F.3d 148 (2d Cir. 2015).  Therefore, Plaintiff's cursory allegations, that the PSTH Directors "are controlled by and serve at the pleasure of the Sponsor, the Pershing Fund Defendant," and PSCM, Am. Compl. ¶ 176, without more, fail to establish that the PSTH Directors lacked independence.

Similarly, Plaintiff's assertion that PSTH's Class B shares grant the Sponsor an "exclusive right to elect and remove" the PSTH Directors, Am. Compl. ¶ 102, is insufficient to establish demand futility.  *See McElrath*, 224 A.3d at 996 ("appointment to the board is an insufficient basis" for challenging director's independence, even where conflicted CEO had "ability to appoint and remove" that director); *see also Evergreen*, 423 F. Supp. 2d at 263 ("[t]he fact that an adviser was responsible for selecting board members is an insufficient basis for establishing lack of independence or disinterestedness.") (citing *Verkouteren v. Blackrock Fin. Mgmt*., 1999 WL 511411, at *3 (S.D.N.Y. July 20, 1999) (dismissing claim under Section 36(b) of ICA for failure to rebut presumption of director independence), *aff'd*, 208 F.3d 204 (2nd Cir. 2000)).  Here, the Amended Complaint merely states a fact common to many boards of directors: the outside directors are initially appointed by and, as a practical matter, serve at the pleasure of the Sponsor.

The Amended Complaint makes no allegations as to whether the PSTH Directors were involved in the issuance of Class B shares from which they purportedly benefit, no allegations they were motivated to act in a certain way as a result of the Sponsor's ability to elect or remove them,

nor any allegations that the Director's "positions were actually threatened" at any point by the Sponsor. *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988) (affirming dismissal of derivative action). The Amended Complaint also makes no claims, even if accepted as true, tending to establish the PSTH Directors lacked independence from the Sponsor, or Mr. Ackman himself, such that their independent judgment might be compromised with respect to any of Plaintiff's claims that would be the subject of the litigation demand.[5] In short, the Amended Complaint alleges no facts that might give reason to doubt the independence of any of the PSTH Directors.

## II.    COUNT II FAILS TO STATE A CLAIM UNDER SECTION 36(b) OF THE ICA

Section 36(b) of the ICA provides that the "investment advisor of a ***registered investment company*** shall be deemed to have a fiduciary duty" with respect to compensation or payments of a material nature paid by the "registered investment company" or shareholder investors "to such investment adviser or any affiliated person of such investment adviser." 15 U.S.C. § 80a-35(b) (emphasis added). As discussed below, Count II of the Amended Complaint fails as a matter of law because 1) PSTH is not a registered investment company; 2) the PSTH Directors are not "affiliated persons" within the meaning of 15 U.S.C. § 80a-2(a)(3); 3) Plaintiff's claims are untimely; and 4) Plaintiff fails to allege the PSTH Directors received excessive fees—or any fees at all.

### A.  PSTH is Not a Registered Investment Company

Claims brought pursuant to Section 36(b) of the ICA must concern "registered investment compan[ies]." 15 U.S.C. § 80a-35(b). However, as Plaintiff recognizes, PSTH is *not*, and never

---

[5] As noted in the Prospectus, the PSTH Directors are highly accomplished professionally. *See* Dabbs Decl., Ex. B (Prospectus) at 9-11.

has been, a registered investment company.[6]  *See* Am. Compl. ¶ 10.  Accordingly, Count II fails as a matter of law.

### B.  The PSTH Directors Are Not Affiliated Persons under Section 36(b) of the ICA

While Count II of the Amended Complaint is doomed from the outset because PSTH is not a registered investment company, Count II also fails because the PSTH Directors are not "affiliated persons" of PSCM (the alleged "investment advisor" to PSTH, *see* Am. Compl. ¶ 56) under the relevant statutory definition.  An "affiliated person" is i) one who owns or controls 5% or more of an entity's voting securities; ii) an entity, 5% or more of which's voting securities are controlled by another person; iii) a person "controlling, controlled by, or under common control with," another; or iv) any "officer, director, partner, copartner or employee of" another person.[7]  15 U.S.C. § 80a-2(a)(3).

Here, none of the PSTH Directors fit any of the definitions of an "affiliated person," and the Amended Complaint pleads only in conclusory fashion that the PSTH Directors are affiliated with PSCM.  *See* Am. Compl. ¶ 197 ("The Director Defendants are liable for violations of ICA § 36(b)  because they are affiliated persons of PSCM and because they are directors of the Company.").

Plaintiff attempts to sidestep this fatal defect, by relying on a separate section of Section 36(b) which refers back to Section 36(a) and provides that an action may be brought against "any other person enumerated in subsection (a) of this section," including actions against officers and directors of a registered investment company.  *See* Am. Compl. ¶ 152 (citing 15 U.S.C. § 80a-

---

[6]   Nor is PSTH an *un*registered company.  As explained in the PSTH Motion to Dismiss, PSTH is not, and never has been, an investment company and, therefore, has never been required to register as one.  Thus, even if Section 36(b) did apply to *un*registered investment companies (and it does not), Plaintiff's claim would still fail as a matter of law.

[7]   There are two other categories applicable only to investment companies themselves.  15 U.S.C. § 80a-2(a)(3).

36(a)(1)).  However, this theory suffers from the same flaw as Plaintiff's Section 36(b) claim generally: PSTH is not a "registered investment company."  *See* 15 U.S.C. § 80a-35(a).

### C.  Plaintiff's Claims under Section 36(b) Are Untimely

Count II also fails because it is untimely.  Section 36(b) provides that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted" and that damages are limited to "compensation or payments received" within that one-year period.  15 U.S.C. § 80a-35(b)(3).  Thus, Section 36(b) claims are subject to dismissal where, as here, the alleged compensation at issue was received more than one year prior to the lawsuit.  *See, e.g.*, *In re AllianceBernstein Mut. Fund Excess. Fee Litig.*, 2006 WL 74439, at *2 (S.D.N.Y. Jan. 11, 2006) (dismissing Section 36(b) claim where plaintiff failed to identify excessive advisory fees received in year prior to filing of lawsuit); *see also Krinsk v. Fund Asset Mgmt., Inc.*, 1986 WL 205, at *4 (S.D.N.Y. May 9, 1986) (dismissing claims for fees received more than one year prior to suit, stating "Congress [did not] intend[] to create a broad remedy under Section 36(b) but rather a mechanism whereby the *current level of management fees* would be policed, tested and, if necessary, rectified.") (emphasis added).  Here, this means that any damages incurred prior to August 2020 are not cognizable in a Section 36(b) claim.  To the extent that Plaintiff's theory is that PSTH was damaged by the Directors' Agreements, those transactions occurred outside of the statutory one-year lookback period.[8]

### D.  Plaintiff Has Failed to Allege Excessive Fees

Under Section 36(b) of the ICA, damages are limited to actual damages suffered by the investment company as a result of the payment of excessive compensation to an investment

---

[8]   Although Plaintiff seeks rescission of the Directors' Agreements in Count II, Am. Compl. ¶¶ 192-197, rescission is not available as a remedy under Section 36(b) of the ICA.  *See Steinberg v. Janus Capital Mgmt., LLC*, 457 F. App'x 261, 267-68 (4th Cir. 2011).

adviser or its affiliates.  *See* 15 U.S.C. § 80a-35(b)(3).  To state a claim under Section 36(b), Plaintiff must allege fees "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining[.]"  *Jones v. Harris Assocs., L.P.*, 559 U.S. 335, 346 (2010) (quoting *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)).  Here, for the reasons stated in Point I, *supra*[ Section I.A.1], and in the PSTH Motion to Dismiss, any calculation of alleged compensation remains purely speculative.  Accordingly, Count II should be dismissed because Plaintiff cannot allege any facts that the PSTH Directors have received *any* fees, let alone any fees that could be considered excessive under the law.

## CONCLUSION

For the reasons set forth above and in the Memorandum of Law in Support of the PSTH Defendants' Motion to Dismiss the Amended Complaint, the Court should dismiss the Amended Complaint in its entirety, with prejudice, and grant such other and further relief as the Court deems just and appropriate.


Dated:     New York, New York
           November 4, 2021


                              Respectfully submitted,

                              CADWALADER, WICKERSHAM & TAFT LLP

                              By: _Nicholas A. Gravante, Jr._
                              Nicholas A. Gravante, Jr.
                              Karen C. Dyer
                              Amanda L. Devereux
                              200 Liberty Street
                              New York, New York 10281
                              Tel.: (212) 504-6000
                              Fax: (212) 504-6666
                              Nicholas.Gravante@cwt.com

Karen.Dyer@cwt.com
Amanda.Devereux@cwt.com

*Attorneys for Defendants Lisa Gersh, Michael
Ovitz, Jacqueline D. Reses and Joseph S. Steinberg*