**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL  rkaplan@kaplanhecker.com

April 22, 2022

**BY ECF**

The Honorable Analisa Torres
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

         Re:    *Assad v. Pershing Square Tontine Holdings, Ltd., et al.*, No. 21-cv-6907 (AT) (BCM)

Dear Judge Torres:

      We write on behalf of the Pershing Square Defendants[1] in response to Plaintiff's letter dated April 14, 2022. ECF 92 ("Ltr."). It is striking that Plaintiff is now attempting to rely on the SEC's proposed Investment Company Act Rule 3a-10 (the "Proposed Rule") "as supplemental authority," Ltr. at 3, given that Plaintiff did not even bring the Proposed Rule to the Court's attention. Defendants did. And as we explained in our submission, the Proposed Rule is not authority. It is a non-effective, non-binding *proposal*, the primary import of which is to underscore yet again that the SEC is the statutory gatekeeper with the authority and the tools to regulate SPACs, including with respect to the applicability of the Investment Company Act (the "ICA"). Thus, if there are to be any changes to the SEC's decades-long treatment of SPACs, those changes should be made by the SEC itself, pursuant to a notice-and-comment process, not in a one-off lawsuit by an opportunistic serial litigant backed by plaintiffs' lawyers and academics.

      Plaintiff's suggestion that proposals should be treated as binding at the very outset of the regulatory process, rather than at its conclusion, is utterly unworkable. The Proposed Rule is the first time that the SEC has ever expressly weighed in on how the ICA might apply to SPACs, and it would mark a dramatic departure from existing law and SEC practice.[2] The Proposed Rule

---

[1] Pershing Square Tontine Holdings, Ltd. ("PSTH"); Pershing Square TH Sponsor, LLC; Pershing Square, L.P.; Pershing Square International, Ltd.; and Pershing Square Holdings, Ltd.

[2] During the public meeting at which the Proposed Rule was announced, SEC Division of Investment Management Director William Birdthistle confirmed: "This proposal is the first time that the Commission has specifically

KAPLAN HECKER & FINK LLP

2

would create a new safe harbor, with a new 18-month threshold for a SPAC to enter into an agreement for a business combination to the extent that the SPAC wishes to avail itself of the safe harbor. This 18-month proposal contradicts the binding organizational and offering documents of existing SPACs, *see, e.g.*, ECF 64-1 (PSTH Certificate of Incorporation) § 9.1 (two years), as well as applicable exchange rules that have been and continue to be in force, *see* NYSE Listed Company Manual 102.06 (three years); NASDAQ IM-5101-2(b) (same). It is not at all clear how the Proposed Rule would, if approved, interact with these related obligations and constraints. Precisely because aspects of the Proposed Rule are meaningful departures from the uniform past practices of the SEC, and thus from the settled expectations of SPACS and other market participants, the SEC is taking the appropriate course of announcing and then receiving comments on the Proposed Rule, so it can then address how, if at all, the Proposed Rule is to be applied. That process is currently underway and in its early stages.

Moreover, as part of that process, many of the SEC's own, specific requests for comment in connection with the Proposed Rule directly undercut Plaintiff's efforts to spin the proposal to his advantage. For example, Plaintiff makes much of the 18-month time limitation, but the SEC itself asked plainly: "Should the time period be longer (e.g., 20 months, 24 months, 36 months)?" ECF 91, Defs.' Ltr., Ex. ("Proposed Rule") at 158.

Further, when new rules are announced, following the sort of public comment period now underway for the Proposed Rule, they are ordinarily solely prospective. *See generally Hawknet, Ltd. v. Overseas Shipping* Agencies, 590 F.3d 87, 91 (2d Cir. 2009) ("there is a general presumption against the retrospective application of statutes and regulations"). This makes sense for a number of good reasons, including applicable provisions and processes of the Administrative Procedure Act, *see, e.g.*, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (agency may not adopt retroactive regulations absent express authority from Congress), and issuers' (and other market participants') reasonable expectations and reliance on existing law and SEC practice. Thus, it is unsurprising that one of the topics on which the SEC has sought comment relates to retroactive application. And indeed, it would be manifestly unjust for the SEC to declare retroactively that all SPACs must have elected, sometime in the past, whether to avail themselves of a safe harbor that did not even exist and that hinges on a time limitation that is half as long as the one previously approved by the SEC under exchange rules. *See* SEC Release No. 34-57785; SEC Release No. 34-58228 (approving NYSE and NASDAQ rules, respectively, allowing for up to three years). As SEC Commissioner Hester M. Peirce recently stated:

> After all, SPACs have been around for a long time, and the Commission has not suggested that it thinks that any of them, let alone many of them, are investment companies. Without affording some notice, the Commission cannot turn on a dime and start treating SPACs that do not meet an arbitrarily determined timeline as investment companies.

See Commissioner Peirce "Statement Regarding SPAC Matter," Apr. 15, 2022, https://www.sec.gov/news/statement/peirce-spac-20220415.

---

addressed the question of whether SPACs are investment companies." SEC Open Commission Meeting (Mar. 30, 2022), https://www.youtube.com/watch?v=t6qX8FGiI_8 (discussion at 43:25-44:45).

KAPLAN HECKER & FINK LLP

3

   Contrary to Plaintiff's assertion, and for all of the above reasons, the Proposed Rule does not constitute some finding by the SEC that PSTH or any other SPAC is presently in violation of the ICA.  In fact, even if the Proposed Rule were adopted and made effective tomorrow (which it could not be given the length of the notice-and-comment period and other processes), the Proposed Rule still would not constitute the SEC's definition of when a SPAC is an investment company.  The SEC has instead proposed a safe harbor under Section 3(a)(1)(A) of the ICA, and in doing so has made it clear that a SPAC "*would not be required to rely on the safe harbor*" to avoid becoming an investment company.  Proposed Rule at 136 (emphasis added).  Plaintiff fundamentally misconstrues the concept of a safe harbor—to say nothing of a proposal—in suggesting that the safe harbor requirements set forth in the Proposed Rule themselves constitute the definition of a lawful SPAC.  If that proposition were true, then the safe harbor would become the rule itself.

   Under the law today, and as it has existed throughout PSTH's limited duration, PSTH has complied with all applicable rules and regulations, and it will continue to do so.  Plaintiff's distortion of both the substance and the import of the Proposed Rule should be disregarded.

   Finally, and in all events, with three months remaining for PSTH to enter into a letter of intent for a business combination or effect a liquidation, it may occur in the ordinary course that PSTH returns the capital held in trust to its shareholders.  We are glad to hear, as expressed in Plaintiff's letter of April 14, that Plaintiff will have no objection if that occurs.

                    Respectfully submitted,
                     /s/ Roberta A. Kaplan
                     Roberta A. Kaplan

cc: All Counsel of Record (by ECF)